## STOUT et al. v. RIGNEY.

### (Circuit Court of Appeals, Eighth Circuit. February 28, 1901.)

### No. 1,443.

1. LIMITATIONS—SUITS TO RECOVER REAL PROPERTY—MISSOURI STATUTE.

Rev. St. Mo. 1899, § 4262, which limits the time within which an action may be brought for the recovery of lands or tenements to 10 years, and which, under the decisions of the state courts, applies to all suits, whether legal or equitable, in their nature, may be invoked by a purchaser in possession under a deed executed upon a foreclosure sale against a suit by the mortgagor to redeem, where the possession of the defendant was adverse to the complainant.

2. ADVERSE POSSESSION—GRANTEE UNDER FORECLOSURE SALE—IRREGULARITY OF PROCEEDINGS.

One who enters upon land under a trustee's deed which purports to convey an absolute title, and which was executed upon a sale by the trustee in a mortgage, the purpose of which was to bar the mortgagor's equity of redemption, must be regarded as holding adversely to the mortgagor from the time his deed is recorded, and possession is taken thereunder, although the sale made by the trustee was irregular or premature; and no actual notice to the mortgagor of the adverse nature of his claim is necessary to invoke the running of the statute of limitations for its protection.

3. DEEDS—PROOF—CERTIFIED COPIES OF RECORD.

Rev. St. Mo. 1899, § 941, as construed by the supreme court of the state, requires proof of the loss or destruction of an original deed conveying military bounty lands, to render a certified copy of the record of such deed admissible in evidence, only where such deed was executed in another state, and not acknowledged in conformity with the laws of Missouri. Where such deed was acknowledged in substantial conformity with the laws of the state, although executed and acknowledged in another state, a copy is admissible upon its being shown to the court that the original "is not within the power of the party wishing to use the same" (Rev. St. Mo. 1899, § 933), and such proof is waived where no specific objection is made on that ground to the introduction of the copy.

4. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PARTIES—ACTION IN NAME OF INSANE PERSON.

Where the curator of an insane person is not, by virtue of his appointment, vested with the title to his ward's realty, but is merely a custodian of the ward's personal property,—as under the statutes of Missouri,—and actions to recover real estate must be brought in the name of the ward, or in his name by his curator, the jurisdiction of a federal court in such an action is to be determined with reference to the citizenship of the insane person, and not that of his curator.[1]

Appeal from the Circuit Court of the United States for the Western District of Missouri.

On January 9, 1896, Alice H. Rigney, the appellee, by her curator, Charles Lyon, exhibited her bill of complaint in the circuit court of the United States for the Western division of the Western district of Missouri against Hamilton De Graw and George Stout, the appellants, which contained the following allegations, in substance: That on October 23, 1872, the said Alice H. Rigney was the owner of a tract of land in Carroll county, Mo., known as the "northeast quarter of section 21, township 54, range 22," and was in the peaceable possession thereof; that on said day she executed a deed of trust in the nature

[1] Diverse citizenship as ground for federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298; Emigration Co. v. Gallegos, 32 C. C. A. 479.

of a mortgage, conveying said land to Thomas D. Price, as trustee for Hamilton De Graw, to secure the payment to him of $1,800; that on December 7, 1875, there was a sale of the aforesaid property under the deed of trust, at which sale De Graw became the purchaser; that by sundry mesne conveyances the title to the property subsequently became vested in George Stout, one of the appellants, and that said De Graw, and those claiming under him, including Stout, had held possession of the property continuously from December 7, 1875, to the date of the filing of the bill. As ground for relief, the complainant below averred that she was of unsound mind when the deed of trust aforesaid was executed in favor of De Graw, and that she was finally adjudged insane, and placed under guardianship, by the probate court of Lafayette county, Mo., in the month of February, 1895, and that the consideration by her received from De Graw for the execution of the deed of trust on October 23, 1872, was of little or no value. By an amendment to the bill, that was subsequently filed, the complainant below further averred, in substance, that her husband, James Rigney, acquired the title to the land in controversy at a sale of the same for taxes in the year 1868; that she had acquired her husband's title to the land at an administrator's sale of her deceased husband's effects in the month of August, 1872; that at the time De Graw made a pretended conveyance of the property in question to her, and took the aforesaid deed of trust to secure the purchase money in the sum of $1,800, he had no title to the property, the title at that time being in the complainant; and that the sale made under the aforesaid deed of trust on December 7, 1875, was void, for the reason that the deed of trust did not authorize a sale of the property at the time the sale under the same took place. The relief which the complainant sought as against the defendants was an accounting as respects the rents and profits of the land while they had had possession of the same, and a decree restoring the property to the complainant. The case was referred to a master for trial and report, who heard all the evidence, and reported that the complainant was not entitled to relief. Exceptions to the master's report were duly filed, and upon the hearing of the same the lower court overruled the master's recommendation, and entered a decree in favor of the complainant, adjudging that the mortgage in favor of De Graw had been fully satisfied prior to December 7, 1893, by the rents and profits of the land which the defendants below had received, and that they be required to restore the possession of the property to the complainant. 100 Fed. 213. The case comes to this court on appeal from such decree.

Louis H. Waters and Harry Lander (J. L. Minnis, on the brief), for appellants.

George H. English and George H. English, Jr., for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The charge which is contained in the amended bill of complant, to the effect that the complainant below was the actual owner of the land in controversy at and prior to the conveyance of the same to her by Hamilton De Graw, and that the latter deed conveyed no title, and that the notes and deed of trust which were executed by the complainant on October 23, 1872, were for that reason without consideration, is not supported by the evidence, and such claim on the part of the complainant must be disregarded. Notwithstanding the alleged tax title to the land in controversy, which, as the complainant claims, formed a part of the assets of her deceased husband's estate, and was subsequently acquired by her, it appears that she was dissatisfied therewith, and that before acquiring such tax title she entered

into a formal written contract with Hamilton De Graw in the month of January, 1872, to purchase the De Graw title to the land for the sum of $2,000. This agreement was carried into effect on October 23, 1872, on which date the De Graw title was conveyed to the complainant, and a deed of trust was executed by her and delivered to De Graw to secure the unpaid portion of the purchase money, which then amounted to $1,800, the residue, as it seems, having been paid in money. This transaction between the complainant and De Graw estops her from asserting that the deed executed by Hamilton De Graw conveyed no title to the lands in controversy, and from asserting that her notes which were given for the purchase money, and were secured by a deed of trust, were without consideration. The trial court, as well as the master, adopted this view of the case, and we are convinced that such ruling was right. The result is that from and after October 23, 1872, when the deed of trust was executed, the complainant sustained towards Hamilton De Graw the relation of a mortgagor in possession, she having voluntarily elected to purchase the De Graw title and execute her notes for the purchase money. Although, in her original bill, the complainant founded her right to relief solely upon the ground that she was insane on October 23, 1872, when the deed of trust in favor of De Graw was executed, and that she remained in that condition until February, 1895, when she was formally adjudged to be incapable of managing her affairs, yet we do not deem it necessary to consider that contention at length. The master, after a painstaking review of the testimony, found against the complainant on this issue, holding that she possessed sufficient mental capacity at that time for the transaction of business, and that she retained such capacity continuously up to the date of the trial. The trial judge concurred in that view to the extent of holding that she was sane on October 23, 1872, and for many years thereafter. He differed with the master only in finding that the complainant had become mentally incapable of managing her affairs several years prior to February, 1895, and to that extent only does there appear to have been any disagreement as respects her mental condition. A cross appeal was not taken in behalf of the appellee for the purpose of obtaining a review of these findings, and such examination as this court has made of the testimony bearing upon that issue convinces us that we would not be warranted in any event in overruling the finding of the master, especially as his finding was approved in substance by the trial court. It must accordingly be assumed that the deed of trust in question was executed when the complainant was in her right mind, and fully capable of attending to her business interests, and that she remained in that condition for at least 20 years thereafter, or until about the year 1893.

In the amended bill a further ground of relief was alleged, such additional allegation being that there was a premature foreclosure of the deed of trust that was held by De Graw, by reason of which fact the complainant's equity of redemption was not barred. The proof to sustain this averment showed that the deed of trust was given to secure five notes for the sum of $360 each, due, respectively, on April 1, 1873, April 1, 1874, April 1, 1875, April 1, 1876, and April 1, 1877.

The clause in the deed of trust authorizing the trustee to make a sale of the mortgaged property was as follows:

"Now, if the said Alice H. Rigney, her executors or administrators, shall pay the sum of money specified in said note, with all the interest that may be due thereon, when said note shall become due and payable, according to the tenor and effect thereof, then this deed shall be void, and the property here-inbefore conveyed shall be released at the expense of said Alice H. Rigney; otherwise, the same shall remain in full force. And the said T. D. Price * * * may proceed to sell the property hereinbefore described, or so much thereof as may be necessary to pay the amount specified in said notes, with interest, and the costs of this trust, at public vendue, for cash, at Carrollton, in the county of Carroll, first giving thirty days' notice of the time, terms, and place of sale and of the property to be sold, by advertisement," etc.

The sale under the deed of trust took place after proper advertisement on December 7, 1875, when only three of the aforesaid notes were overdue and unpaid; but the deed which was executed by the trustee in pursuance of the power of sale contained a recital that "default was made in the payment of the principal and interest of said notes secured by said deed," by reason whereof the trustee had proceeded to execute the powers to him given by virtue of the deed of trust. In view of these facts the trial court held that such foreclosure sale was premature and void, for the reason that all the notes secured by the trust deed were not due when the sale was made. It further held, in substance, that, as the trustee's sale was void, the purchaser of the property at said sale entered into possession of the property as a mortgagee; that those who subsequently held under him by mesne conveyances, including the defendant Stout, entered upon and held the property in the same capacity; and that such continuous holdings for a period of more than 20 years did not operate as a bar to the complainant's right to redeem, because notice was not brought home to the complainant that they were holding the property adversely, and in denial of her right to redeem.

The principal question presented by the appeal is whether this latter view is tenable. In the state of Missouri, where the land in controversy is situated, it is well settled by repeated decisions that the statute of that state (Rev. St. Mo. 1899, § 4262), which declares, in substance, that no action for the recovery of lands or tenements shall be commenced by any person unless it appears that the plaintiff or other person under whom he claims were seised or possessed of the premises in question within 10 years before the commencement of such action, applies to all civil actions for the recovery of real property, whether they are such as were denominated legal or equitable prior to the Code. According to the decisions in that state, which are binding upon this court in suits affecting the title to land there located, the statute in question is applicable to suits to enforce trusts in real property, and to actions brought to set aside deeds made in fraud of creditors. It may also be invoked by a mortgagor to bar the foreclosure of a mortgage when the mortgagor asserts that he has held possession for more than 10 years without recognizing the mortgage, and in open denial of the same and the mortgagee's alleged right to foreclose. Rogers v. Brown, 61 Mo. 187, 195; Kelly v. Hurt, 61 Mo. 463, 466; Lewis v. Schwenn, 93 Mo. 26, 31; Bush v. White, 85

Mo. 339, 359, 360; Reed v. Painter, 145 Mo. 341, 356, 46 S. W. 1089. It is clear, therefore, that the defendants in the case in hand may invoke the protection of the statute in question if their possession subsequent to the sale under the deed of trust on December 7, 1875, was adverse to the complainant. The decree in the lower court appears to have been rested solely on the ground that, because the sale under the deed of trust was premature, the entry which was made by the purchaser at that sale was in subordination to the rights of the mortgagor, and that the possession so taken was not an adverse possession, and could not become such without actual notice to the mortgagor that he denied her right to redeem. We do not deem it necessary on the present occasion to determine whether the sale under the deed of trust was in fact premature, or whether the default which was made by the complainant in the payment of three of the notes secured by the deed of trust warranted the trustee in exercising the power of sale thereby conferred. For present purposes we shall assume, without deciding, that the view of the learned trial judge on this point was correct. But does it follow from this concession that the purchaser at the trustee's sale must, for that reason, be regarded as having entered into possession of the property in the capacity of a mortgagee, irrespective of his actual intention, and that his seisin and possession was thereafter the seisin and possession of the complainant until he had notified her to the contrary, so that the statute of limitations could not in the meantime be invoked against her? We are of opinion that this question should be answered in the negative. The character of the possession in question, whether adverse or otherwise, must be determined from all the facts and circumstances of the case, and particularly with reference to the dominion exercised over the property by the purchaser and by his grantees subsequent to the sale. If the acts done and performed by those in possession were of such a nature as would naturally advise the world that the occupants claimed to be the owners of the fee, and such was their claim in fact, then their possession was adverse, and of such a nature as operated after the lapse of 10 years to bar the complainant's right of redemption. The testimony in the case shows that the trustee's deed which purported to convey the title in fee to Hamilton De Graw was duly recorded in Carroll county, Mo., on the day it was executed, to wit, on December 7, 1875, when it became constructive notice to all the world of its contents; that De Graw took possession of the property under said deed on January 1, 1876; that he subsequently conveyed the land as his own to other parties; and that the title, after various transfers, became vested eventually in the defendant Stout. The proof also shows open and notorious possession of the property by De Graw and those claiming under him from January 1, 1876, until the present action was instituted, and that in the meantime there had been no assertion by the complainant of her right to redeem, or any recognition of that right by any of the successive occupants of the land. In view of these facts we entertain no doubt that De Graw and each of his successors in interest entered into possession of the land claiming to be the absolute owners thereof. The dominion which they respectively exercised over the property is consistent with that view, and

wholly inconsistent with the theory that they assumed possession of the property merely as mortgagees to protect a lien which they had acquired. Nor do we believe it to have been essential to render their possession adverse that they should have notified the complainant that they were holding the land adversely, and would dispute her right to redeem, inasmuch as the entry was made under a deed which purported to convey an absolute title, and which also professed to foreclose her right to redeem. In the case of Rogers v. Brown, 61 Mo. 187, 195, it was ruled, among other things, that the grantee under a fraudulent conveyance would be regarded as holding adversely to creditors who had challenged the validity of the conveyance from the time his deed was recorded, and we perceive no sufficient reason why one who enters upon land under a trustee's deed which purports to convey an absolute title, and to have been made with a view of barring the mortgagor's equity of redemption, should not be regarded as holding adversely to the mortgagor from the time that his deed is recorded and possession is taken, although the sale made by the trustee was irregular or premature. The precise question last suggested arose in the case of Miner v. Beekman, 50 N. Y. 337, 344, in which case it was decided that the statute of limitations began to run against the purchaser of the equity of redemption, who had not been made a party to an action of foreclosure which was brought against the mortgagor, from the time the mortgagee entered into possession as a purchaser under the defective decree of foreclosure. Our conclusion is, therefore, that the complainant's right to redeem was effectually barred by the statute of limitations long before the present bill was filed, she having been of sound mind at the time of the adverse entry on January 1, 1876, and for many years thereafter.

The conclusion last announced will necessitate a dismissal of the bill of complaint; and such action is also rendered necessary by the fact that the complainant appears to have conveyed away all of her interest in the property in controversy by a deed made to William H. Stevenson on August 26, 1875, which deed was acknowledged in accordance with the laws of the state, and duly recorded in Carroll county, Mo., on November 26, 1875. A certified copy of the record of that conveyance was admitted in evidence by the master to show that the complainant had parted with her interest in the property, but the trial court held, on exceptions to the master's report, that it was erroneously admitted, and refused to recognize it. The reason assigned by the trial court for the rejection of this conveyance was, in substance, that the statute of the state (Rev. St. Mo. 1899, § 941) only allows copies of deeds affecting military bounty lands to be read in evidence "upon proof of the loss or destruction of the original instrument." The lands in question in this case are what are known as "military bounty lands," and no proof was adduced at the trial to establish the loss or destruction of the original deed. It should be observed, however, that no such objection to the deed was made before the master when the same was offered and received in evidence, the objection at that time being, in substance, that it was incompetent, irrelevant, and immaterial. In the case of Tully v. Canfield, 60 Mo. 99, it was expressly decided that, when a deed conveying military bounty lands is acknowl-

edged according to the statutes of Missouri, a certified copy thereof may be read in evidence without previous proof of the loss or destruction of the original, although it was acknowledged outside of the state; and that the section of the statute above referred to, requiring proof of the loss or destruction of the original instrument before a copy thereof shall be admitted in evidence, only applies to those conveyances affecting military bounty land which are executed in a foreign state, and acknowledged in conformity with the laws of that state, and not in conformity with the laws of Missouri. We are unable to discover that the doctrine enunciated in this case has ever been overruled since the case of Crispen v. Hannavan, 50 Mo. 416 (and the same case as reported in 72 Mo. 552), wherein it was held that the provisions of section 941 were applicable, and required proof of the loss or destruction of the original deed, was a case in which the acknowledgment had been taken outside of the state of Missouri, and not in conformity with its laws. The deed executed by the complainant in favor of Stevenson, although executed and acknowledged in the state of Illinois, was executed and acknowledged in substantial conformity with the laws of the state of Missouri; and within the rule announced in Tully v. Canfield, a certified copy thereof was admissible in evidence upon its being shown to the court that the original was "not within the power of the party wishing to use the same." Rev. St. Mo. 1899, § 933. As the deed in question was not objected to when it was offered upon the ground that the latter species of proof was not made, we are of opinion that the objection to the deed on that ground was waived, as was held by the supreme court of the state, under similar circumstances, in the case of Boogher v. Neece, 75 Mo. 385. The trial court seems to have erred, therefore, in rejecting the conveyance to Stevenson, which showed prima facie that the complainant below had parted with all of her interest in the property, and had no right to maintain the action.

In conclusion it should be observed that the defendants below, who are the appellants here, insisted in the lower court that it had no jurisdiction, and the same contention is renewed here. This contention is founded upon the fact that Charles Lyon, the curator, is a citizen of the state of Missouri, of which state the defendants below are also citizens, and that the requisite diversity of citizenship, for that reason, is not shown. This contention was overruled by the trial court, and its action in that regard meets with our approval. In the state of Missouri, from which Lyon derived his appointment as curator, the curator of an insane person is not vested with the title to his ward's real property, and actions of ejectment in that state and other actions of a like nature to recover the possession of real property must be brought in the name of the insane person, or in the name of the insane person acting by and through his curator. Reed v. Wilson, 13 Mo. 29; Allen v. Ranson, 44 Mo. 263. As the curator of an insane person is not, by virtue of his appointment, vested with the title to his ward's realty, but is merely a custodian or bailiff of the ward's personal property, an action like the one at bar must, of necessity, be brought in the name of the insane person, or in the name of the insane person by his curator, and the jurisdiction of the federal courts

in such cases should be determined with reference to the citizenship of the insane person, rather than by the citizenship of the curator.

It results from the foregoing that the decree of the lower court must be reversed. It is so ordered, and that the case be remanded to the circuit court, with directions to dismiss the bill of complaint.