JENNIE A. MUNRO, in Equity, *vs.* SOPHIA M. BARTON, and another.

Knox.   Opinion December 10, 1903.

*Mortgage,* Right to redeem barred.   *Adverse possession.   Limitations.*

If a mortgagee is permitted to take and hold possession of the mortgaged premises for twenty years after the debt becomes payable to the exclusion of the mortgagor and in denial of his rights, without accounting and without admitting that he holds only as mortgagee, the mortgagor's right of redemption is barred and the mortgagee's title becomes absolute.

It is obviously the adverse character of the possession, however, and not the mere fact of possession by the mortgagee for twenty years that will operate to convert the mortgage into an absolute one.  Twenty years' possession by the mortgagee after condition broken may raise a presumption of foreclosure, but it is by no means conclusive.  It is the nature of the mortgagee's occupancy which determines the question of the mortgagor's right to redeem.  To constitute a bar to such right it must appear that the mortgagee's possession is unequivocally adverse to the mortgagor, or to those claiming under him.

*Held;* that the possession of the defendants, and those under whom they claim, has been marked by all the characteristics of adverse possession and has been so open, notorious, exclusive and uninterrupted for more than forty years, that the plaintiffs and their predecessors in title as well as all others interested, must be presumed to know that the occupation was not in subordination to the title of the mortgagor, but in the assertion of an absolute title by the defendants in themselves.

See *Munro* v. *Barton*, 95 Maine, 262.

On report.   Bill dismissed.

This was a bill in equity brought by the plaintiff to redeem certain land, located in the town of Vinalhaven, from the defendants.   The bill was so amended, by agreement, at nisi prius, after the decision in 95 Maine, 262, as to account for the one-eighth of the premises not claimed by the plaintiff, and by joining Watson V. Barton, the husband of the defendant, who holds, in one acre of the described premises, the same rights which his wife holds in the remainder.

Both plaintiff and defendants claimed title under William Brown. The title of William Brown was derived from Thomas Brown, by deed of December 26, 1835, which was recorded in the registry of

deeds for the County of Hancock, upon December 28, 1835.   William
Brown mortgaged the premises to Timothy Fernald, to secure the
sum of $65.00, payable in one year, with interest.   This mortgage
was also recorded in the Hancock registry.   After a controversy had
arisen between the plaintiff and defendants, on September 27, 1894,
it was recorded in the Waldo registry.   This mortgage was on Febru-
ary 14, 1845, assigned to Reuben Leadbetter, by assignment recorded
in the Waldo registry on Jany. 16, 1846.   Reuben Leadbetter
attempted to begin a foreclosure of the mortgage, by peaceable entry
in the presence of two witnesses, on the 9th day of January, 1846, the
certificate of the same being recorded in the Waldo registry, on the
16th of Jany. 1846.   Upon the same date as the assignment, Timothy
Fernald made a warranty deed of the premises to said Leadbetter.
Reuben Leadbetter made a warranty deed of the premises on January
10, 1853, to Dennis Conway.   The defendants claimed through
mesne conveyances from Dennis Conway.   The plaintiff claimed
through conveyances from the heirs of William Brown, under a deed
from her father, William H. Brown, one of the heirs of William
Brown, who had, prior to the conveyance to the plaintiff, received
conveyance of the interest of all the other heirs except the one-eighth
interest.   The plaintiff claimed a right to redeem from the mortgage.
The defendants set up a foreclosure of the mortgage, and further set
up a right by adverse possession for a period of more than twenty
years.

The case appears in the opinion.

*C. E. and A. S. Littlefield,* for plaintiff.

*J. E. Moore,* for defendants.

SITTING:  WISWELL, C. J., EMERY, WHITEHOUSE, STROUT,
        SAVAGE, POWERS, JJ.

WHITEHOUSE, J.   This is a bill in equity brought to redeem a
mortgage of certain real estate situated in the town of Vinalhaven,
given by William Brown to Timothy Fernald December 28, 1835,
and recorded in the registry of Hancock County, which then com-
prised the town of Vinalhaven.   The original bill was dated March

12, 1895, and the subpœna served on the defendant Sophia M. Barton, February 25, 1896. By agreement of the parties the bill was amended, after it was filed in court, by inserting an allegation respecting the ownership of the one undivided-eighth part of the mortgaged premises not represented by the plaintiff, and also by making the defendant's husband, Watson V. Barton, who holds title to one acre of the premises described, a party to this bill. The cause was reported for the consideration of the law court on bill, answer and proof. In her bill the plaintiff offered to pay what should be found due upon the mortgage, but there was "neither allegation nor proof of any prior tender of payment or performance, nor of any demand upon the mortgagee, or persons claiming under him for a true account of the sum due upon the mortgage and a neglect or refusal on his or their part to render such account" as required by statute. Nor were there any averments in the bill showing that a tender could not be made, or that the defendant in any way by her default had prevented the plaintiff from performing or tendering performance of the condition of the mortgage. Under these circumstances, it was held by the court that the bill could not be maintained (95 Maine, 262) and the cause was thereupon remanded for any amendment to the bill respecting "tender or demand and refusal to account" which the facts might warrant. An amendment setting forth a demand and refusal to account has been duly filed, and the cause is now before the court a second time on report for final decision upon the merits of the cause.

At the date of the mortgage in question the premises conveyed consisted of thirty acres of unproductive land, only a small patch being under cultivation, and a slab-roofed cabin or "shanty" upon it about fourteen feet square. William Brown acquired title to the place for $65.00 by deed bearing date December 26, 1835, and both parties derive title from him. Wm. H. Brown, one of the four children of Wm. Brown, acquired title to five-eighths of it by purchase from the other heirs and then made a voluntary conveyance of his entire seven-eighths to this plaintiff, his daughter, who then bore the name of Jennie A. Tolman. The defendant derives title through several mesne conveyances from the mortgagee of William Brown. It has been seen that William Brown's mortgage to Timothy Fernald

was dated December 28, 1835, only two days after the date of Brown's deed of purchase, and was given to secure the payment of $65.00 and interest in one year from that time. This appears to have been the entire consideration of the deed to Brown and the mortgage was doubtless given as a part of the same transaction for the purpose of raising the money to purchase the place. Timothy Fernald, the mortgagee, assigned the mortgage to Reuben Leadbetter by an assignment bearing date February 14, 1845, but not acknowledged until December 30, 1845, and recorded January 16, 1846. On the same day (February 14, 1845) Fernald gave to Leadbetter a warranty deed of the place in consideration of $50.00. He also commenced proceedings for a foreclosure of the mortgage by making peaceable entry upon the premises in the presence of two witnesses January 9, 1846, and recording a certificate of the fact in Waldo County, to which Vinalhaven had been set off in 1838. January 10, 1853, Leadbetter conveyed the property to Dennis Conway by warranty deed for the same consideration of $50.00. December 31, 1873, Dennis Conway conveyed one acre of the lot to Hannah S. Brown, who conveyed the same to the defendant Watson V. Barton, November 26, 1892. August 13, 1875, Dennis Conway gave his son, Rufus Y. Conway, a warranty deed of the residue of the place in consideration of $300. September 18, 1885, Rufus Y. Conway conveyed by warranty deed to Lane and Libby, and May 12, 1886, Lane and Libby conveyed to the defendant Sophia M. Barton; each of the two deeds last named being for the consideration of $300.

In their answer the defendants, in the first place, interpose the alleged foreclosure as an insuperable obstacle to the maintenance of the plaintiff's bill to redeem the property from the mortgage; and secondly, if by reason of the fact that the certificate of entry was recorded in Waldo County instead of Hancock, or for any other cause, the court should hold the proceedings for foreclosure invalid and ineffectual for the purpose, the defendants insist that the plaintiff's right to redeem is conclusively barred by the adverse possession of the premises on the part of the defendants and their predecessors in title, not only for more than twenty years, but for more than forty years prior to the date of the plaintiff's bill to redeem.

Subsequently the defendants also filed a plea of res judicata because of a former judgment in favor of the defendant Sophia M. Barton in the real action brought by this plaintiff to recover possession of the same premises.

In *McPherson* v. *Hayward,* 81 Maine, 336, the court say: "No question of laches arises under a bill to redeem a mortgage. The duration of the mortgagor's right to redeem is clearly defined by law, and one the court cannot abridge, or enlarge by a single day. The right continues indefinitely, until barred by some process of foreclosure, or by twenty years' adverse possession of the land by the mortgagee." But it is undoubtedly a settled rule in this State that if the mortgagee is permitted to take and hold possession of the mortgaged premises for twenty years after the debt becomes payable to the exclusion of the mortgagor and in denial of his rights without accounting and without admitting that he holds only as mortgagee, the mortgagor's right of redemption is barred and the mortgagee's title becomes absolute. *Roberts* v. *Littlefield,* 48 Maine, 61; *McPherson* v. *Hayward,* 81 Maine, 329; *Frisbee* v. *Frisbee,* 86 Maine, 444. It is obviously the adverse character of the possession, however, and not the mere fact of possession by the mortgagee for twenty years that will operate to convert the mortgage title into an absolute one. Twenty years' possession by the mortgagee after condition broken may raise a presumption of foreclosure, but it is by no means conclusive. It is the nature of the mortgagee's occupancy which determines the question of the mortgagor's right to redeem. To constitute a bar to such right it must appear that the mortgagor's possession is unequivocally adverse to the mortgagor, or to those claiming under him. 2 Jones on Mort. 1144—1156; *McPherson* v. *Hayward,* 81 Maine, supra. "The general rule in equity," says Judge Story, "is that twenty years' exclusive possession by a mortgagee is a bar to the equity of redemption. The exceptions are where there have been during that period acts done, or solemn acknowledgments made by the mortgagee, recognizing the title as a mere mortgage." *Dexter* v. *Arnold,* 3 Sumn. 152.

In the case at bar it is not in controversy that the mortgagor William Brown, having made default with respect to the payment of

both the principal and interest of the mortgage debt, left the place in March, 1842, and took up his residence in Rockland. It is not in controversy that neither he nor any of his heirs ever afterward had the personal occupation of these premises. There is testimony from William H. Brown, son of the mortgagor, and father of the nominal plaintiff, that the place was afterward occupied a short time by his uncle, but the defendant's evidence shows that after Wm. Brown left in 1842, the place remained unoccupied until December 22, 1845, when it is admitted Dennis Conway entered into actual occupation of it. The plaintiff contends that Conway's possession commenced under an arrangement with Wm. Brown, and introduces the testimony of Wm. H. Brown purporting to show that in 1845, when he was ten years old, he heard his father say to Dennis Conway that he could have the place until he wanted it himself if he would keep the taxes paid on it. This witness also testifies that he heard another conversation in 1854 between his father and Conway in which the latter stated that he had kept the taxes paid on the place and inquired if his father wanted it. He further states that he had a personal interview with Conway in 1875 in which Conway referred to his occupation of the place and said his father had been very kind to him in allowing him "to live on the place for just keeping the taxes paid." Another brother, Samuel P. Brown, seeks to corroborate Wm. H. Brown as to the conversation with Conway in 1875, and Samuel Pease claims to have heard the conversation between Wm. H. and Conway in 1875. Oscar Rokes and Harriet Rokes also testify that they heard Conway say in 1871, or 1872, that he went on to the place to have the use of it for paying the taxes.

Under such circumstances the plaintiff contends that, although Dennis Conway may subsequently have asserted title in himself by virtue of his warranty deed from Leadbetter in 1853, his possession having originated under an express arrangement with the mortgagor could not become adverse to him without distinct notice to him of his denial of the mortgagor's title and assertion of absolute title in himself. And such is undoubtedly the law. *McPherson* v. *Hayward*, 81 Maine, supra; *Quint* v. *Little*, 4 Maine, 495; 2 Jones on Mort. 1152.

But the defendant denies that Dennis Conway ever occupied the place under William Brown, and insists that the plaintiff's testimony tending to show any such arrangement by the oral admissions of Conway is so utterly inconsistent with the record evidence, with the undisputed conduct of all the parties during the forty years prior to the filing of this bill, and is so overborne by the whole history of the case, that it should be rejected as incredible and unreliable, and wholly insufficient to lay the foundation for any decree respecting the title to real estate.

At the time Dennis Conway took possession of the place December 22, 1845, the mortgage debt with accrued interest amounted to more than $100, being double the estimated value of the property at that time, as shown by the consideration of $50.00 in the deeds from Fernald to Leadbetter and Leadbetter to Conway. William Brown evidently did not consider it worth redemption and when he left it he undoubtedly abandoned the idea of ever redeeming it. It was manifestly so understood by the parties, for it appears that Fernald, the mortgagee, gave Leadbetter a warranty deed of it February 14, 1845, ten months before Conway moved on to the place, and that for more than forty years thereafter no occupant of the premises was ever requested to account or ever did account to William Brown or any of his heirs on that mortgage; and that after the attempted foreclosure in January, 1846, no reference whatever was ever made to the mortgage as an existing incumbrance by any of the parties during all that time. In 1845 Reuben Leadbetter was extensively engaged in the fishing business and Dennis Conway was working in his employment at certain seasons of the year. Immediately after Conway took possession Leadbetter had the assignment of the mortgage to him duly acknowledged and recorded, and also commenced the foreclosure for the obvious purpose of being prepared to convey an unquestioned title. From the time he took possession of this place, Conway's occupancy was "open, notorious, exclusive and comporting with the ordinary management and improvement of a farm by the owner." He did in fact pay the taxes, and between 1846 and 1853, he made an addition to the house larger than the original "shanty," erected a small but substantial barn, cleared up two or three acres of the land

and built fences around the lot. It is inconceivable that he would have made such expensive and permanent improvements if he was then occupying under a temporary arrangement with William Brown. He received his warranty deed in 1853, and repeatedly stated to different parties that he had "cleared his place and got his deed from Leadbetter;" the plain inference being that he had an arrangement with Leadbetter to purchase the place, had made permanent improvements upon it with that understanding, and had finally succeeded in paying for it according to agreement. It is incredible that in 1854, after thus receiving a warranty deed of the place, Conway should have made the admissions imputed to him by Wm. H. Brown showing that he held under the elder Brown by paying the taxes. Brown admits that in 1853, after the sale to Conway, he heard Fernald say to his father that he would send back the old mortgage, "but there was no need as there was no deed or note back of it." Brown appears to have been contented with this view of it.

Again, in 1860, Dennis Conway filed a homestead certificate dated November 30th, and recorded in the registry of Knox County, where William Brown still resided, declaring himself to be the owner of these premises. In 1871 he gave Moses Webster a lease of the place for eight years with an option to purchase and in that event Conway was to give a "good and sufficient warranty deed." Thus Dennis Conway continued to occupy and improve the premises until 1875 when he gave his son Rufus Y. a warranty deed of the place for the stated consideration of $300, and died in August of that year. Up to this time neither Wm. Brown nor any of his heirs had made any protest against these conveyances or any inquiry whatever in regard to this property. The testimony of Wm. H. Brown and others that in 1871 and 1875 Dennis Conway still admitted that he had occupied by the gracious permission of Wm. Brown is thus hopelessly discredited by these undisputed facts.

Rufus Y. Conway occupied and held possession of the premises until 1885 when he sold and gave a warranty deed of the place to Lane and Libby, and the following year Lane and Libby conveyed by warranty deed to the defendant who has been in possession to the present time. Since the defendant's occupancy began, a granite

quarry has been opened upon the premises and a large wharf constructed at an expense of $1600. The greatly increased value and importance imparted to the property by these new developments doubtless stimulated inquiry on the part of the heirs of Wm. Brown in relation to the title and gave rise to this controversy. But it was not until 1892 that any active measures were taken, and then Wm. H. Brown asked to see Conway's deed, and stated that his mother "didn't sign the mortgage and he was going to claim a third for her." The idea that a right of redemption still existed had not then been suggested to his mind.

Under these circumstances, the observations of Judge Story in *Dexter* v. *Arnold*, 3 Sumn. supra, a case in which the facts were strikingly analogous to those at bar, are equally applicable here: "One question which has been argued is, whether any naked, verbal admissions, or parol acknowledgments in conversations, are sufficient to establish the fact that the mortgagee has treated the conveyance as a mortgage within twenty years. Such admissions and acknowledgments are certainly open to the strong objection, that they are easily fabricated, and difficult, if not impossible, to be disproved in many cases, and that they have a tendency to shake the security of all titles under mortgages, even after a very long, exclusive possession by the mortgagee; nay, even after the possession of a half-century . . . . For, admitting that parol evidence is admissible, I am of opinion that the parol evidence of the confessions and conversations of the mortgagee, testified to by the witnesses, is wholly unsatisfactory, too loose, and too equivocal, and too infirm in its reach and bearing and circumstances, to justify any decree in favor of a redemption."

It is, accordingly, the opinion of the court in the case at bar that the weight of reliable evidence shows that Dennis Conway entered into occupation of the premises under an arrangement with Reuben Leadbetter and not with Wm. Brown; and that the possession of the defendants, and those under whom they claim, has been marked by all the characteristics of adverse possession and has been so open, notorious, exclusive and uninterrupted for more than forty years, that William Brown and his heirs, as well as all others interested, must be presumed to know that the occupation was not in subordi-

nation to the title of the mortgagor, but in the assertion of an absolute title in themselves.

This conclusion renders it unnecessary to consider the effect of the former judgment in the action at law, the validity of the proceedings for foreclosure, or the question of demand and refusal to account. The mortgagor's right to redeem is barred by the adverse possession of the defendants and their predecessors in title continued for more than forty years prior to the commencement of this bill, and the entry must be,

*Bill dismissed with costs.*