## TURK v. PAGE et al.

No. 8206—Opinion Filed April 30, 1918.

Rehearing Denied July 23, 1918.

(174 Pac. 1081.)

(Syllabus.)

### 1. Appeal and Error—Reversal and Remand with Directions — Condition of Case— Amendment of Pleadings.

Where a decree is reversed and cause remanded with directions to the trial court to grant a new trial, it stands the same, except as to questions of law settled by the proceedings in error, as if no trial had been had. The parties may, if the case warrants, amend their pleadings under proper restrictions in such way as to conform to the views of the appellate court in respect to the allegations of fact necessary to entitle them to the relief sought.

### 2. Pleading—Motion to Strike—Admissions.

A motion to strike a pleading admits the truth of all facts well pleaded for the purposes of the motion, except where the motion is to strike the pleadings as a sham.

### 3. Same—Answer—Striking Paragraphs.

Considered as a permissible pleading, it is error to strike from an answer eight separate paragraphs thereof, where one or more of such paragraphs of the defenses interposed is sufficient.

### 4. Mortgages — Mortgagee's Purchase at Void Foreclosure Sale — Action to Redeem.

A mortgagee, who purchases the mortgaged premises at a void foreclosure sale and enters into the possession thereof in good faith believing he has acquired the title thereto by virtue of his purchase and the sheriff's deed made in pursuance thereof and of the subsequent judicial proceedings had in connection therewith, may avail himself of the statute of limitations as a defense in a proceeding to redeem by the grantee of the mortgagor, where his possession has been actual, open, notorious, hostile to the title claimed by the mortgagee or his successor in interest and to the world at large, and continuous for such length of time as may be required to bar the action to redeem.

### 5. Limitation of Actions—Entry by Mortgagee.

Where a mortgagee enters into possession of the mortgaged premises under claim of title in himself, and hence not in subordination of the mortgagor's title, and notice of such possession and adverse claim is brought home to the mortgagor or his successor in interest, the statute of limitations against an action to redeem is set in motion.

Error from District Court, Cleveland County; F. B. Swank, Judge.

Suit to quiet title by Herman Turk against Albert S. Page and others. Decree for defendants, and plaintiff brings error. Reversed and remanded, with instructions.

See, also, 64 Okla. 251, 167 Pac. 462.

W. L. Eagleton, Solon W. Turk, and Ames, Chambers, Lowe & Richardson, for plaintiff in error.

George J. Eacock, J. S. Jenkins, Ben F. Williams, and W. J. Davidson, for defendants in error.

SHARP, C. J. In order to intelligently present the issues made in the trial court, and to determine certain of the material questions urged in this court, it will be necessary to give a somewhat complete summary of the pleadings filed by the respective parties throughout the history of the present suit.

In the original petition filed February 18, 1909, in which Morgan Sharp, Mary Sharp, and Albert S. Page were named as defendants, plaintiff claimed to be the owner of the land in question by virtue of a sheriff's deed made and delivered to him by the sheriff of Cleveland county on May 13, 1897. He charged that Page claimed adverse title to the premises by virtue of a deed made to him by the defendants, Morgan and Mary Sharp, at some time subsequent to the giving of plaintiff's mortgage (meaning the mortgage attempted to be foreclosed, and pursuant to which plaintiff claimed title under sheriff's deed), and charged that if such deed had in fact been executed, it had never been placed of record, and that Page was without right in the premises. The petition further charged that Morgan and Mary Sharp acquired title to the land by virtue of a patent thereto from the United States, and that the same was subject to the mortgage given plaintiff thereon and through the foreclosure of which he acquired title; that the claim of the Sharps was without right or equity, and, together with the claim of defendant Page constituted a cloud upon his title, which he asked to have quieted, and

the defendants barred from setting up or asserting any title or interest in the premises adverse to plaintiff, and for such other relief as should appear equitable and proper.

April 5, 1909, the defendant Albert S. Page and Lettie Page (the latter having been made a party defendant on application of defendant Albert S. Page) filed their answer and cross-petition, in which, among other things, after denying generally the allegations of the petition, they claimed title to the lands in controversy by deed executed by Morgan and Mary Sharp to Albert S. Page under date of August 2, 1895, immediately after the execution of which they entered into possession and occupied the same as a homestead until dispossessed thereof by fraud and deceit practiced on them by the plaintiff; that they had never abandoned the lands, but claimed the same as their homesead. They asked that plaintiff take nothing by his suit, and that they be decreed to be the owners of the land and entitled to the possession thereof. For their cross-petition they charged that patent to the lands had issued to Morgan Sharp February 13, 1896, said Sharp having been a settler upon the land under the homestead laws, and had made proof thereof and received his certificate from the proper constituted authorities of the United States of America; that, after procuring such certificate, and on the 2d day of August, 1895, Morgan Sharp joined by his wife, Mary Sharp, executed and delivered to the defendant Albert S. Page, a deed of conveyance to said lands, and immediately upon the execution of which the defendants went into possession of the lands and continued to occupy the same as a homestead of the family until on or about the 2d day of January, 1897, when the plaintiff wrongfully, unlawfully, fraudulently, and forcibly dispossessed them and took possession of the lands for himself; that the plaintiff refused to return the possession of the premises to the defendants, and had wrongfully and forcibly withheld possession thereof from them; that the reasonable rental value of the lands for agricultural purposes was $300 per annum, or a total of $3,600, which amount plaintiff had refused to pay. They asked judgment against the plaintiff for restitution and possession of the premises; that their title be quieted; and they have judgment for their damages in the sum of $3,600, for legal interest thereon and for costs.

October 5th thereafter plaintiff replied, denying generally the material allegations of the answer, admitted the execution of the deed from Morgan Sharp to Page, but charged that the same conveyed only the equity of redemption of Sharp and wife and was given subject to the mortgage of plaintiff, which was subsequently foreclosed and the equity of redemption barred, and that plaintiff was the owner of the title by virtue of a sheriff's deed made pursuant to the foreclosure proceedings. Plaintiff denied the fraud or deceit charged by defendants, and asked judgment as prayed for in his petition. In his answer to the cross-petition, in addition to a general denial, plaintiff admitted the ownership of Morgan Sharp to the premises and the conveyance to Page; charged the making to him of a prior mortgage by Sharp and wife, and that the deed to Page conveyed only the grantor's equity of redemption, and was made subject to plaintiff's mortgage as expressed in the deed. That foreclosure suit was instituted March 9, 1896, and the mortgage subsequently foreclosed, the premises sold by the sheriff, return made, sale confirmed, and deed executed by the sheriff to plaintiff under order of court, and through which plaintiff claimed title, and that, as the successor in interest of the equity of redemption, any claim of the defendants therein was barred and foreclosed. Plaintiff further charged that the defendants had voluntarily abandoned the premises, and denied any knowledge of the circumstances under which they were ejected, as charged in defendants' cross-petition. Plaintiff further claimed that he had been in the uninterrupted and peaceable possession of the premises for more than 12 years under the sheriff's deed, and that the defendants had never at any time asserted any interest in the property until after they had learned that the records of the foreclosure proceedings had been burned, and that plaintiff was trying to supply same by quieting his title, when they attempted to assert their right to the property by "false and fraudulent statements." Plaintiff asked that defendants take nothing, and that he have the relief prayed in his petition. On the same day defendants Page and wife filed their answer to the reply and cross-petition of the plaintiff, in which they denied that prior to the execution of the deed from Morgan Sharp and wife to Albert S. Page the grantors therein executed to plaintiff their mortgage to the land, and that there was a valid mortgage thereon at the time Sharp and wife conveyed the land to Page; that if there was such mortgage the same was void, and executed contrary to law and in violation of the statutes of the United States, and that if foreclosure proceedings were ever brought, which was not admitted, but denied,

they—the Pages or either of them—had no notice thereof nor were they advised that "judgment was being sought to foreclose a mortgage on the lands," and denied that foreclosure was consummated and the lands sold and a deed made pursuant thereto to any one; but, they said that, if such was done, it in no manner affected their rights because of their want of knowledge of the pendency of such suit and in which they had not been summoned according to law, and that the court entering such judgment was, for the reasons stated, without jurisdiction. The defendants further charged that they never assumed the payment of the mortgage indebtedness at the time of their purchase from Sharp and wife; also that Morgan Sharp had no such interest in the land as authorized him to make a mortgage thereon. Defendants prayed judgment as in their original petition. The defendants Sharp and wife, though constructively summoned, made default. Trial was had on January 18, 1910, and, the case being taken under advisement, decree was rendered December 3, 1910, in favor of plaintiff and against defendants Morgan Sharp, Mary Sharp, and Albert S. Page (Lettie Page having died February 3, 1910). The decree quieted and confirmed plaintiff's title to the lands and barred defendants from asserting any right adverse to plaintiff, and for costs. Motion for new trial being overruled, proceedings in error were prosecuted to this court, where on July 14, 1914, an opinion was filed and judgment rendered, reversing the judgment of the trial court and granting a new trial. Page v. Turk et al., 43 Okla. 667, 143 Pac. 1047. November 10th thereafter mandate was issued by which the district court of Cleveland county was commanded to cause the reversal to be shown of record in the lower court, and that such other and further proceedings be had therein as should accord with the opinion and right and justice in the premises. The mandate was filed in the district court on the following day. On March 12, 1915, by consent of all parties Hon. James M. Gresham was appointed referee to hear and determine all of the issues both of law and fact and to report his separate findings of fact and conclusions of law. On the same day, on application of defendant Page, and over the objection of plaintiff, defendant was granted permission to file an amended answer and cross-petition. Amended answer so filed charged that defendant Page claimed ownership in fee of the premises in controversy as charged in his original answer and cross-petition; admitted that Sharp and wife executed a mortgage on the lands to plaintiff on October 25, 1894, to secure the payment of a note for $500, due November 1, 1897, with interest, and that said mortgage was duly recorded in the office of the register of deeds of Cleveland county; and denied generally all the allegations in the plaintiff's petition not therein before specifically admitted. For his amended cross-petition Page charged the issuance of a patent to Sharp February 13, 1896; the making of the Turk mortgage on October 25, 1894, to secure the payment of the aforesaid note and the due recordation of such mortgage; charged the making of the deed of August 2, 1895, to him subject to the mortgage from Sharp and wife to Turk, and which deed was thereafter duly filed for record; that thereupon Page and wife entered into the possession of the lands and occupied the same as a homestead until on or about January 2, 1897, at which time, while they were temporarily absent therefrom, but without any intention of abandoning the same, the said Turk entered upon the premises and took possession thereof and placed tenants thereon under a claim to an interest in the land by virtue of the mortgage to him from Sharp and wife; that continuously from January 2, 1897, to the present time (April 26, 1915) the said plaintiff had been in the occupancy of all of said lands and improvements thereon, holding under said mortgage and under the claim made by him that said mortgage indebtedness had not been satisfied; that during said times plaintiff kept said premises rented to various tenants, and received and appropriated the rents and profits thereof to his own use, and had failed and refused to render any account thereof to the defendant, and had refused to cancel his mortgage or to decree satisfaction thereof, and had refused to surrender possession of the premises to defendant, and that the reasonable annual rental value of the lands was $450. The amended cross-petition further charged that the mortgage from Sharp to Turk was invalid in consequence of the same having been executed in violation of the laws of the United States, prohibiting the mortgaging of lands occupied and held as a homestead prior to the issuance of the patent therefor to the entryman, and that the mortgage was at best but a colorable lien upon the lands. It was charged that if the mortgage was in fact a valid mortgage upon the premises, then Turk had received, through the rents and profits derived therefrom, after deducting all proper and legal disbursements properly chargeable for necessary repairs and upkeep of the land, $7,000, which sum he received in trust for the benefit of the defendant after application thereof of an

amount necessary to liquidate any indebtedness that may have been legally due him upon said alleged mortgage lien. The amended cross-petition then charged the reversal of the former judgment of the trial court and the defendant's contention of his rights as determined in the opinion of the court. In conclusion it was charged that on an accounting there was due defendant over and above such sums as were due plaintiff, the sum of $7,000: that the Turk mortgage constituted a cloud upon his title, which he was entitled to have removed and his title quieted, "and to have redemption and restoration to possession of said lands." It was asked that the court declare as to the validity of the mortgage from Sharp to Turk; that an accounting be had between plaintiff and defendant for the rents and profits and insurance (on buildings insured by Turk and destroyed by fire) during the period of plaintiff's occupancy; that the mortgage be decreed to be fully satisfied and paid and ordered canceled of record; and that the title of defendant be quieted, and he be decreed a redemption of the land against plaintiff, and restored to the possession thereof, and for judgment in the sum of $7,000, or such sum as should be found due upon final accounting, with interest and costs of suit.

May 15. 1915, plaintiff filed his motion to strike the amended answer and cross-petition, charging that the same was a departure from the cross-petition and pleadings theretofore filed. in that it set up an entirely different cause of action from the other pleadings filed in the cause. May 27, 1915, plaintiff filed his additional motion to strike portions of defendant's answer and cross-petition. The referee, to whom it seems all questions. including the making up of the issues, were referred, by agreement of the parties, sustained the motions to strike amended answer and cross-petition in so far as the allegations thereof attacked the validity of Turk's mortgage, and allowed the defendant to amend by interlineation, and overruled plaintiff's motion in all other respects. The only material change affected thereby was to eliminate the issue of Sharp's right to legally execute the Turk mortgage. Thereupon plaintiff demurred to the defendant's amended answer and cross-petition, which demurrer was overruled. On June 9, 1915, the plaintiff filed his reply and answer to the amended answer and cross-petition of defendant Page.

The first paragraph thereof was in form a general denial.

The second paragraph admitted the making of the Sharp mortgage to secure an indebtedness to plaintiff; admitted that Turk occupied and controlled the lands since May, 1897, and was at the time in the occupancy and control thereof; admitted the destruction by fire of the residence house and other improvements, the reversal of the former judgment in the Supreme Court, and that the suit was remanded to the district court for a new trial. Further, it was admitted that under the issues then joined the Supreme Court held that the defendant was the owner of the fee-simple title to the land, and that plaintiff was in the occupancy of the same as mortgagee in possession, and that his occupancy thereof could not be disturbed prior to the payment of his mortgage indebtedness. Under a second subdivision of the second paragraph plaintiff charged that he took possession of the land on May 13, 1897, as the owner thereof under foreclosure proceedings in the district court of Cleveland county, a copy of the sheriff's deed being attached and made a part of his reply; charged that the defendant Page knew that the plaintiff was occupying, using, and enjoying the land as the owner thereof from the date he took possession until the 5th day of April, 1909, at which time the defendant Page filed his original answer and cross-petition, and that at no time or in any manner did the defendant make any claim of interest in the land, or raise any question as to plaintiff's title or right of occupancy, or make any objection to his use of the land. It was charged that, as the rights of the defendant Page did not accrue to him within 5 years prior to his filing his answer and cross-petition, all right and interest that he had therein was barred by the 5-year statute of limitations.

The third paragraph charged that on November 21, 1902, by the consideration of the district court of Cleveland county, he obtained a judgment quieting his title to the lands against Morgan Sharp and Mary Sharp, who were at the time the only persons who appeared of record as the owners thereof, and that as his action was based upon his claim of ownership as obtained through and under the sheriff's deed and the foreclosure proceedings, such suit and judgment was notice to the world that plaintiff was claiming the land as owner thereof under color of title founded upon the sheriff's deed to him; that the defendant Page had not, at any time within 5 years from the rendition of the judgment, made any claim of ownership to or interest in the land, and could not then, or at any time after 5 years

from the rendition of the judgment, claim such interest by reason of his failure to assert any claim therein during said 5-year period, and was therefore barred from making such claim. Also plaintiff charged that the placing of record by defendant on the 18th day of January, 1910, of the deed given him by Sharp and wife August 2, 1895, did not, and could not, affect the rights of the plaintiff under his prior judgment.

The fourth paragraph charged that by the filing of plaintiff's suit on the 18th day of February, 1909, defendant Page was informed that the plaintiff was claiming the land in controversy as the absolute owner, and although plaintiff may have been up to that time a mortgagee in possession, yet his suit showed that he was holding the land as owner adversely to the defendant and all the rest of the world, of which fact defendant was fully informed; that no action having been brought by defendant, or any defense offered by him in plaintiff's suit, nor any separate action to redeem the land from plaintiff as mortgagee in possession and for an accounting, for more than 5 years after defendant was so informed of said adverse holding, defendant's action to redeem and for an accounting was barred by the 5-year statute of limitations.

The fifth paragraph charged generally that defendant's action to redeem and for accounting, not being brought within 5 years after his cause of action had accrued, was barred.

The sixth paragraph charged generally the defendant's action to redeem and for accounting, not having been brought within 15 years after his cause of action had accrued, was barred by the 15-year statute of limitations.

The seventh paragraph charged that because of his judgment in the district court of Cleveland county on November 21, 1902, quieting title to the lands against Morgan Sharp and wife, who were at the time the only persons who appeared of record as having any interest therein, the defendant was estopped from making any claim thereto, and that the subsequent act of placing his deed of record in no wise affected the rights of plaintiff as legal owner of the land, except to cloud his title thereto.

The eighth paragraph charged that the defendant's claim as contained in his amended answer and cross-petition was a stale demand, and should not be maintained because of the defendant's laches. It further charged: That when plaintiff took peaceable possession of the land on May 13, 1897, under the sheriff's deed, the defendant voluntarily abandoned the premises. That plaintiff's possession was taken with the full knowledge and acquiescence of the defendant Page, and that plaintiff did many and divers acts of ownership concerning the land with defendant's knowledge. That said defendant knew the plaintiff was holding, using, and controlling the land as the owner thereof from the date of his entry thereon, and at no time or in any manner did he make objection thereto, nor did he at any time bring to the knowledge of the plaintiff the fact that he claimed to be the owner of or in any way interested in the land—

"but stood by and acquiesced in the use and enjoyment of the place by plaintiff during all of said time; to the renting of said lands by the plaintiff and the collecting and using the rents therefrom; to the paying out of large sums of money by plaintiff in the upkeep and improving of said land; the payment of the first mortgage thereon, and the taxes from year to year, and by his acquiescence in and failure to object to or raise any question as to the ownership of plaintiff, this plaintiff was, as such owner, led to exercise full control of said place, to pay off as owner the first mortgage, with interest, against said place; to remortgage same for borrowed money, to keep the place in repair; to build a splendid farmhouse, and place other valuable improvements thereon, pay the taxes and insurance, and do and perform all things with reference to said place as any owner would have done, the defendant never paid any taxes on said land, never exercised any control of ownership over same, never paid any part of the mortgage indebtedness thereon, nor made any claim thereto, but wholly abandoned said place, and thus led the plaintiff to believe that his title was good, and thereby the plaintiff was led to spend large sums of money on said property, and, believing the same to be his, did not keep a strict account of what he expended or what he received, and, if required to go into an accounting and forced to show, after this great lapse of time, what he has received by way of rents and profits, and what he has expended for the upkeep and permanent improvements of said place, would place him at great hardship and disadvantage, as many of the witnesses are dead, and many have left for other states and localities, and their present whereabouts are unknown to this plaintiff, and for these reasons he insists that the defendant should not, at this time, be allowed to make any claim with reference to these matters because of his having waited so long to make such claim, and this plaintiff therefore says that the claim of the defendant is a stale demand, and, if he ever had any rights, that the same have been lost by his own laches."

The ninth paragraph charged: That the defendant was estopped from redeeming or asserting in any way any right, title, or interest in the land for the following reasons: That for nearly 13 years, to wit, from May 13, 1897, to April 5, 1909, plaintiff held the land as the owner thereof under sheriff's deed in foreclosure proceedings, and claimed to be the actual and bona fide owner of such land, holding it adversely to the world during such period of time. That the defendant knew plaintiff was holding the land, paying the taxes and insurance premiums on the buildings thereon, keeping the place in repair, placing improvements thereon, and using the rents and profits therefrom, and that plaintiff had paid off the first or Whittaker mortgage on the land, and had remortgaged the same to secure the payment of borrowed money. That defendant knew plaintiff was so holding, so using, and so improving the land as the owner thereof by virtue of his purchase at foreclosure sale, and at no time did he make any claim of any right, title, or interest therein, but instead acquiesced in the holding, using, enjoying, and making improvements on the land by plaintiff, and the payment by him of large sums of money on the first mortgage indebtedness and in permanent improvements on the place. Plaintiff further charged that when he bought and took possession of the land, it was not worth in excess of $1,000, and not until said land had increased in value from $8,000 to $12,000 did the defendant make any claim thereto; that because of such facts defendant should be estopped from making any claim of ownership to the land in question.

The tenth paragraph of the answer is in the alternative, and asks that an accounting be had in the event plaintiff's several defenses of limitations, stale demand, laches, and estopped are not sustained. In the prayer of his reply plaintiff asked that the court hold the defendant's demand barred by limitations; that in the event it should be held the defendant's claim was not barred by limitation, he be given judgment quieting his title by reason of the defendant's claim being a stale demand, the result of his laches, and that he be estopped from redeeming the land and claiming any further right, title, or interest therein by reason of his laches in asserting his right to redeem and for an accounting within a reasonable time from the accrual of his cause of action. In the event these defenses should not be sustained, then defendant asked that an accounting be had. On the day the reply was filed, defendant filed his motion to strike the second, third, fourth, fifth, sixth, seventh, eighth, and ninth paragraphs of plaintiff's reply, on the ground:

"That each and all of the matters and things set out in said separate defenses have been fully adjudicated and determined by the Supreme Court of the state of Oklahoma in this cause, and were finally concluded by said decision."

The motion was sustained, to which plaintiff excepted, and the ruling of the referee made a part of the record by bill of exceptions. On the day following, the defendant filed his reply to the first and tenth paragraph of the plaintiff's reply, and the case proceeded to trial on the remaining issues.

On October 25, 1915, the referee filed his report, and on November 17th thereafter the court adopted the findings of fact and conclusions of law of the referee, and caused judgment to be entered in favor of plaintiff and against defendant in the sum of $1,639.-50 to be paid within four months, and provided that if payment be not made within the time named, then the defendant's action to redeem and for an accounting should be dismissed at his costs. The case is brought here for review by the plaintiff below.

It will be necessary to consider a limited number of the many assignments of error urged as grounds for reversal. The third and thirty-fifth assignments challenge the action of the court in refusing to strike defendant's amended answer and cross-petition because of a departure from the averments of the pleadings theretofore filed by the defendant. The amended answer and cross-petition was filed by the defendant in error in an attempt to conform to the ruling of the Supreme Court in the former opinion, and was, we think, permissible. In the opinion, the judgment of the trial court was reversed and a new trial granted. The mandate issued pursuant thereto directed the trial court to take such other and further proceedings therein as should accord with the opinion and right and justice in the premises. The case comes within the rule announced in Consolidated Steel & Wire Co. v. Burnham, Hanna, Munger & Co., 8 Okla. 514, 58 Pac. 654, Ball v. Rankin, 23 Okla. 801, 101 Pac. 1105, Harding v. Gillett, 25 Okla. 199, 107 Pac. 665, and recognized in State ex rel. Miller v. Dudley, 63 Okla. 241, 165 Pac. 127. In the first of the foregoing cases in the course of the opinion, the following rule was announced by Chief Justice Burford:

"The cause having been remanded generally, without any directions, it was the duty

of the district court to render such judgment as this court should have rendered or directed on the issue determined in the opinion of this court. But aside from this one limitation, the cause stood, when remanded, the same as if no trial had been had. Pleadings could be amended, supplementary pleadings filed, and new issues formed, under proper restrictions, so long as there was no attempt to reopen the issue of the priority of the liens."

In Ball v. Rankin, supra, a case very much in point, it is stated by Chief Justice Kane that:

"If the parties could amend their pleadings in such a way as to conform to the views of the Supreme Court in relation to the allegation of facts necessary to entitle them to the relief sought, they ought not to be deprived of that right merely because they and the trial court had previously been in error as to the theory of the case"

—and further, that where a cause is reversed and remanded by the Supreme Court, with directions to the trial court to "take such other and further proceedings in the matter as shall accord with said Supreme Court opinion," it stands in the court below the same as if no trial had been had; that pleadings could be amended, supplementary pleadings filed and new issues formed under proper restrictions.

The opinion of this court in St. Louis & S. F. R. Co. v. Hardy, District Judge, 45 Okla. 423, 146 Pac. 38, is not in conflict with the former opinions of the court. In that case it was said that the findings and conclusions of this court on the former appeal covered the entire case made by the pleadings and the evidence in the trial court. Nothing was left open for examination or determination in the trial court, and therefore it was the duty of respondent to enter judgment therein upon motion.

The fourth assignment of error involves the action of the court in sustaining the referee in striking paragraphs 2 to 9, inclusive, from the plaintiff's answer to defendant's amended answer and cross-petition. As already seen, the motion was based upon the claim that each and all of the several defenses interposed had been fully adjudicated, determined, and concluded by the opinion of this court on the former appeal. This claim of former adjudication counsel consistently urge, as they say in their brief in this court, after referring to the several defenses stricken:

"We rely wholly upon these questions having been fully adjudicated by this court in Page v. Turk, supra, and by that adjudication having become the law of the case."

It is on this account that we have set out at length the substance of all of the pleadings filed, as it is necessary to know what the issues were both in the first trial as well as on appeal. In the original answer and cross-petition of the Pages they claimed ownership of the premises and an unlawful eviction therefrom by plaintiff, and asked to be restored to the possession thereof, and to have their title quieted and for a recovery of the reasonable rental value thereof. In their reply to plaintiff's answer to their cross-petition, they denied the validity of plaintiff's mortgage; attacked the validity of the foreclosure judgment for want of service of summons on them; claimed that Morgan Sharp had no interest in the land such as would authorize him to give a mortgage thereon; and asked judgment as in their original petition. The legal effect of the defense interposed was nothing more or less than a claim of absolute ownership to the premises through their purchase from the Sharps, without recognizing in the plaintiff any right or interest therein. They expressly challenged the validity of the mortgage through the foreclosure of which plaintiff claimed title. Their contention was the very antithesis of an offer to redeem either the Turk mortgage or the prior mortgage in favor of Whittaker, paid off and discharged by Turk. It was upon the issue of ownership that the case first went to trial. Turk claimed title by virtue of his purchase at the mortgage foreclosure sale and the sheriff's deed issued pursuant thereto under order of court, while Page claimed the absolute ownership of the land on account of his purchase from Sharp. Because the land sold for slightly less than two-thirds of the appraised value, and the failure, though duly summoned, to enter judgment against defendant Page, foreclosing his equity of redemption, the judgment was reversed. It being determined that plaintiff because of the invalidity of the sale acquired no title by the sheriff's deed, the court announced that he occupied the status of a mortgagee in possession. Upon the going down of the mandate the defendant, over plaintiff's objection, obtained leave to file an amended answer and cross-petition, in which he continued his attack upon the validity of the mortgage from Sharp to Turk. That portion of his amended cross-petition was stricken on motion of the plaintiff. Assuming that the amended answer and cross-petition upon which the case finally went to trial stated a cause of action entitling defendant to redeem, it was error to strike from plaintiff's reply there-

to the several defenses contained therein. Like a demurrer, a motion to strike a pleading admits the truth of all facts well pleaded for the purposes of the motion, except where the motion is to strike a pleading as a sham. While in some cases the granting or refusing a motion to strike rests in the sound discretion of the trial court, in doing so the court must not act arbitrarily. The discretion referred to contemplates a legal discretion, a discretion to be exercised in discerning the course prescribed by law according to legal principles. Goodwin v. Robinson, 30 Ark. 536-546; Lybecker v. Murray, 58 Cal. 186; Searles v. Lux, 86 Iowa, 61, 52 N. W. 327; Horner v. Plumley, 97 Md. 271, 54 Atl. 971. Motions to strike pleadings for any cause are not to be encouraged, and will be granted only in a clear case. Hart v. Scott, 168 Ind. 530, 81 N. E. 481; Haist v. Bell, 24 App. Div. 252, 48 N. Y. Supp. 405; Walter v. Fowler, 85 N. Y. 621; Willey v. Herrett, 66 Or. 348, 133 Pac. 630; Power v. Pringle, 31 Nova Scotia, 78; Clark v. Miller, 35 N. Brunswick, 42. A motion to strike a pleading as an entirety, or several separate paragraphs of a pleading, cannot be sustained where one or more of the paragraphs or defenses therein are sufficient. Gilbert v. Loberg, 86 Miss. 661, 57 N. W. 982. Ordinarily whether an answer contains a valid defense is a question to be determined by demurrer or motion at the trial, and not by a motion to strike. The reply brought into the case issues not previously tendered, and included the defense of limitation, stale demand, laches, and estoppel. Assuming that the pleading filed prior to the amendment was sufficient to raise the legal issue of limitations, it must · be remembered that Page, as the owner by purchase from Sharp of the equity of redemption, did not seek to redeem the land from either the Turk mortgage or the Whittaker mortgage paid off by Turk, so that, even though the statute of limitations was invoked by Turk, it was in an action differing materially from the case submitted at the second trial. Page did not offer to redeem until April 26, 1915, when he filed his amended answer and cross-petition, and it is a familiar rule that an amendment, which interposes a new or different cause of action and makes a new or different demand, does not relate back to the beginning of the action so as to stop the running of the statute of limitations, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed. Hiatt v. Auld, 11 Kan. 176; Union Pac. Ry. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983; 25 Cyc. 1308.

Obviously it was prejudicial error for the court to strike from the plaintiff's reply every defense set up in bar, save such as could be offered under a general denial, and the right to an accounting. These defenses were not before the court or determined by the former opinion, where the court, because of error in the foreclosure proceedings, declared Turk to be a mortgagee in possession. It is true the court said that, being a mortgagee in possession, "his rights are not adverse to the rights of the mortgagor or his grantee, so long as the relation of mortgagor and mortgagee exists," and that, his possession not being adverse, the statute of limitations did not bar the plaintiff in error (Page) of his right of redemption. But this was beyond the issues. It was unnecessary for the court to determine whether Turk held possession adversely or not. This statement as to the nature of his holding was unfortunate. At most it was but dictum, and is not binding on a second appeal between the same parties under amended pleadings over the same subject-matter. It is true, as stated in the former opinion that the possession of a morgagee is not considered hostile to the interest of the mortgagor during the continuance of the relationship of mortgagor and mortgagee. Gillett v. Romig, 17 Okla. 324-329, 87 Pac. 32. But this does not deprive the mortgagee of the right to set up an adverse claim, as there is nothing in the relation that will prevent him from doing so. He may disclaim under the mortgage and claim the absolute ownership, and in that event the period of limitation provided by statute will begin to run in his favor from the time of his disavowal. 1 R. C. L. 799; 1 Cyc. 1071: 20 A. & E. Enc. 975. A mortgagee who takes possession of premises under foreclosure proceedings in good-faith, believing that by virtue thereof he has acquired a good title thereto, is not such a legal pariah as to be denied, in proper cases, a remedy in the courts. The rule is well stated in Morgan v. Morgan, 10 Ga. 297, as follows:

"It is further well settled that, if the mortgagee disavows the mortgage, denies the amicable character of his possession, and sets up a title adverse to the claim of the mortgagor's right to redeem within 20 years, and a knowledge of the disavowal is brought home to the mortgagor, the statute of limitations will, from that moment, run in his (the mortgagor's) favor. * * * Avowing title in himself, the tenant asserts a possession adverse to all the world; he throws off his character of trustee, and

denies the relation of mortgagor and mortgagee. The result is that, if this is known to the cestui que trust, to the mortgagor, he is put upon exercising diligence. He must pursue his remedy as in any other case of adverse possession within the statutory term, or lose his right. The position of the mortgagee is that of defiance, and if he acquiesces in that position until the statutory term runs out, the award of justice, and the policy of the law declare that 'his title, good or bad, is forever barred."

In Munro v. Barton, 98 Me. 250, 56 Atl. 844, it was said that it was the adverse character of the possession, and not the mere fact of possession by the mortgagee for 20 years, that would operate to convert the mortgage title into an absolute one; that it was the nature of the mortgagee's occupancy which determined the question of the mortgagor's right to redeem; and, in order to constitute a bar to such right, it must appear that the mortgagee's possession was unequivocally adverse to the mortgagor, or those claiming under him. In West v. Banking Co., 33 S. D. 465, 146 N. W. 598, the rule was stated to be:

"The law is well settled that where a mortgagee enters into possession, claiming such possession adverse to the mortgagor, and notice that such possession is claimed to be adverse is brought home to the mortgagor or to the party who has succeeded to the mortgagor's interest in the land, the statute of limitation against the action to redeem is set in motion"—citing Becker v. McCrea, 193 N. Y. 423, 86 N. E. 463, 23 L. R. A. (N. S.) 754; Claflin Co. v. Middlesex Banking Co. (C. C.) 113 Fed. 958; Cox v. Tompkinson, 39 Wash. 70, 80 Pac. 1005; Stout v. Rigney, 107 Fed. 545, 46 C. C. A. 459; Nash v. Northwest Land Co., 15 N. D. 566, 108 N. W. 792.

As the trial court did not pass upon the sufficiency of the several defenses pleaded in reply to the amended answer and cross-petition but struck the same obviously upon the ground urged by the defendant, we will not anticipate a ruling thereon or determine in advance of a trial the sufficiency of the stricken paragraphs; it being sufficient to say that any objection thereto could not properly be raised by motion to strike.

The judgment of the trial court is reversed, and the cause remanded, with instructions to set aside the judgment, to overrule defendant's motion to strike, and for such further proceedings as may be necessary, not inconsistent with the views herein expressed.

All the Justices concurring but Justice BRETT, absent and not participating.