SKELLY OIL CO. et al. v. FUNK.

No. 32342.   Nov. 12, 1946.

*174 P. 2d 241.*

E. M. Gallaher, of Tulsa, for plaintiffs in error.

Harry L. Dyer and Dickson M. Saunders, both of Tulsa, for defendant in error.

CORN, J. This is an appeal by defendants, Skelly Oil Company and E. W. Berry, from a judgment rendered on a jury verdict in favor of plaintiff, in an action brought to recover money alleged to be due and owing by defendant.

In June, 1941, defendant Skelly Oil Company leased a filling station to plaintiff, the lease providing defendant had the option of cancellation upon notice to plaintiff. December 1, 1943, said defendant exercised such option and canceled plaintiff's lease. At that time it was agreed Berry, the incoming lessee, would purchase the inventoried stock in the business; defendant Skelly Oil Company agreeing to pay plaintiff the inventory price upon his assignment of the inventoried stock to Berry. The amount assigned was $669.22, which said defendant's agent agreed to pay.

In December, 1943, said defendant paid plaintiff part of the amount, but refused to pay $330.79, for which plaintiff brought this action.

Defendant Skelly Oil Company filed separate answer, counterclaim and set-off. Therein it was alleged that during June, July, and August of 1941, plaintiff had been furnishing merchandise on credit to one Kelly, and in the course of business assigned to said defendant sales tickets amounting to $5,547.68, representing merchandise sold; that defendant attempted to collect the amount of such sales tickets, but numerous of these, amounting to $330.79, were disputed by Kelly, because not signed by him or his agent. Thereafter, as was customary, defendant charged this amount back against plaintiff's account. The defendant then asked that such counterclaim be set off against the plaintiff's demand.

By reply plaintiff alleged said defendant had ratified all sales tickets assigned to them, and after acceptance had settled Kelly's account at a lesser figure than $5,547.68 owed, and had then arbitrarily and without plaintiff's knowledge deducted $330.79 from the balance due plaintiff. Plaintiff then pleaded that defendant, by virtue of the acceptance and holding of the sales tickets for more than two years without disputing same, waived its right to deny the ratification and acceptance of the tickets in the due course of business.

Upon the issues so made the cause was tried to a jury, who returned a verdict for plaintiff for $330.79.

In seeking reversal of this judgment it is urged by defendant that it neither ratified nor accepted the unsigned credit tickets. The evidence showed that Kelly, a trucking contractor operating numerous trucks, was given an office in plaintiff's station and arrangements were made for extending credit to him in purchasing all necessary items from plaintiff. Kelly testified the agreement was that all purchases had to be approved either by him or his foreman.

Under the customary mode of operation the plaintiff extended credit to persons whose credit was approved by defendant, and then assigned the credit tickets (charge slips) to defendant as payment for merchandise (oil, gas, etc.) purchased from defendant. Everything further regarding such credit accounts was handled by defendant, it being understood that unsigned tickets could be charged back to the dealer if a customer disputed the account.

Included in the Kelly account were 41 charge tickets, amounting to $330.79, which Kelly refused to pay because same were unsigned by him or his foreman. The testimony tended to show that sometimes Kelly or his foreman would take a charge book upon which the truck purchases had been entered and sign numerous slips at the same time, thus acknowledging the sales, rather than signing each ticket at the time of purchase. These unsigned tickets were credited to plaintiff in 1941 when received, but were not charged back against him until 1943, subsequent to the time defendant settled Kelly's ac-

count which, including the disputed tickets, amounted to $5,547.68, for the sum of $4,500. This compromise was worked out between Kelly and defendant without plaintiff's knowledge, subsequent to the time Kelly disputed these tickets, and before defendant had rendered plaintiff a statement (December 17, 1943) purporting to be a final inventory and showing plaintiff's balance as zero.

Under these circumstances this matter resolves itself into the single question whether the defendant's acts in connection with handling of the charge tickets constituted a waiver of the right to reject the unsigned tickets, precluding defendant from denying the ratification and acceptance of the tickets in the course of business.

Defendant insists that a waiver is a voluntary relinquishment of a known right, and must result from an intentional relinquishment of a known right, or an estoppel from enforcing same. Fields v. State, 77 Okla. Cr. 1, 139 P. 2d 124. And, that mere delay in asserting a claim does not operate to create an estoppel.

These rules as urged by defendant are not controlling herein. Defendant accepted the sales tickets which were disputed, and this was known to both parties. Both knew the company reserved the right to charge back to the dealer any disputed tickets. Defendant chose not to do this, but carried these tickets as cash items for more than two years. At its own convenience defendant worked out a compromise of the Kelly account, without consideration of plaintiff's rights in the matter, and then rejected the disputed items and charged them back to plaintiff.

Defendant relies upon the rule announced in Champlin Refg. Co. v. Magnolia Pet. Co., 178 Okla. 203, 62 P. 2d 249, and in Seidenbach's v. Underwood, 178 Okla. 624, 63 P. 2d 950, to the effect that a waiver will not be implied from slight circumstances, but must be evidenced by a clear and unequivocal act showing an intention to waive the right in question, or some conduct tending to show estoppel.

Whether defendant's course of action constituted a waiver of the right to reject such items was a question of fact for the jury. In either instance the jury's finding that defendant had waived its right to reject these disputed sales tickets was amply supported by the evidence. Having resolved this matter in favor of plaintiff, and the evidence being sufficient upon which to base the finding, this court will not disturb the jury's verdict. See Prudential Fire Ins. Co. v. Trave Taylor Co., 194 Okla. 394, 152 P. 2d 273.

The defendant also contends that by refusing requested instruction, and in giving instruction No. 2, the trial court placed upon defendant the burden of showing there had been no waiver, whereas the burden of showing waiver should have been upon the plaintiff.

Defendant's requested instruction was as follows:

"You are instructed that in order to constitute an estoppel, the acceptance of the tickets in dispute in this case must have been a full, absolute and unconditional acceptance."

The instruction given by the trial court in this connection was as follows:

"You are instructed, gentlemen of the jury, if you find and believe from a preponderance of the evidence that the Skelly Oil Company accepted the unsigned tickets for which merchandise was sold or purported to be sold to Tom Kelly, or any of his agents or employees on his trucks, or that it did not notify plaintiff in a reasonable time that they would not honor them, then you cannot hold the plaintiff liable for said sales tickets which were accepted in the due course of business by the Skelly Oil Company, and your verdict should be for plaintiff. On the other hand, if you find from a preponderance of the evidence, that the defendant Skelly Oil Company did reject said sales tickets

within a reasonable time, then your verdict should be for defendant.

"In this connection you are instructed that a reasonable time is the length of time within which a reasonably prudent person would have acted, under the same or similar circumstances."

Defendant's complaint with the instruction given is that there was no question to be considered as to the "time" within which the defendant could question the unsigned tickets; and this instruction placed upon the defendant the burden of disproving estoppel, rather than placing upon plaintiff the burden of proof.

The evidence showed defendant accepted the unsigned tickets and then retained them for more than two years, while carrying out its own negotiations for acceptance of the account. Plaintiff alleged defendant had, under these circumstances, waived its right to reject the tickets and charge them back to his account. The jury had to pass upon this evidence in determining whether defendant's course of dealing in the entire matter was a waiver of its rights. To determine this the jury had to review defendant's handling of the matter, including consideration of the time which elapsed. The instruction complained of advised them the finding in this respect depended upon preponderance of evidence as to whether defendant had accepted or rejected the tickets. We are of the opinion the instruction given fairly advised the jury as to the question involved. In such circumstances the instructions are not to be disturbed by the reviewing court. Oklahoma Gas & Electric Co. v. Busha, 179 Okla. 505, 66 P. 2d 64.

And, when there is conflicting evidence as to the state of an account in an action of legal cognizance, the verdict of the jury is conclusive. W. E. Titus Radio Corp. v. Richards, 190 Okla. 125, 121 P. 2d 579.

Judgment affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, and DAVISON, JJ., concur.