## DERUY v. NOAH.

No. 32939.    Sept. 30, 1947.

*185 P. 2d 189.*

J. Scott Vincent, of Cheyenne, and Robinson & Oden, of Altus, for plaintiff in error.

Wise & Ivester, of Sayre, for defendant in error:

RILEY, J. This is an appeal from a judgment on the pleadings in favor of J. I. Noah, plaintiff, against A. F. Deruy, defendant. Noah sued Deruy to recover the sum of $403 paid as delinquent taxes by Noah on certain land in which he owned the mineral rights and Deruy owned the surface.

The land involved is in Beckham county. The pleadings show that in 1918 the land was owned by Felix Miller and his wife, Robbie Miller; in that year the Millers mortgaged the land to Pittsburg Mortgage Investment Company to secure a note in the sum of $550 due December 1, 1927; on August 20, 1921, the Millers conveyed the land to H. R. Redwine, who, in December, 1921, conveyed to plaintiff, J. I. Noah, and Noah assumed and agreed to pay the mortgage indebtedness; and on January 20, 1925, Noah conveyed the land to James W. P. Whisenhurst, Noah reserving, by exception, the mineral rights. In April, 1925, Whisenhurst conveyed to N. W. Allen, and on April 27, 1926, Allen conveyed to G. Williams; in 1928 the mortgagee commenced proceedings to foreclose its mortgage. Felix G. Miller and wife and one Sinclair were made parties defendant; neither J. I. Noah nor G. Williams was made party defendant.

In 1928 judgment was rendered foreclosing the mortgage and ordering the land sold, and the land was bid in for $500 by J. Luther Taylor to whom the judgment had been assigned. On July 29, 1929, sheriff's deed was issued to Taylor (the sheriff's deed was recorded in 1929).

Thereafter Taylor was adjudged a bankrupt and the land was sold by a trustee in bankruptcy to C. L. Konantz who thereafter conveyed to K. T. Newman who, on March 12, 1937, conveyed by quitclaim deed to defendant A. F. Deruy. The deeds were placed of record soon after they were executed. When J. Luther Taylor purchased the land he went into possession, claiming title; immediately after defendant Deruy obtained his quitclaim deed, he went into possession believing he had the entire title.

The taxes for the years 1930 to 1943, inclusive, became delinquent and the land had at some time been assessed as one unit with the N.E.¼ of S.W.¼ of the same section, which defendant owned. A tax sale certificate had been issued to one M. E. Deruy and assigned to one Pritchard who had commenced proceedings, by notice, to obtain a tax deed. In order to protect his mineral interest, plaintiff was compelled to and did pay the delinquent taxes, interest, penalties, and costs in the sum of $403 for which he sought judgment in this action against defendant Deruy and sought a lien on the land, and $100 attorney's fees.

Defendant Deruy claimed ownership in fee under the conveyances above

mentioned, and adverse possession for more than five years after the issuance and recording of the sheriff's deed, and alleged that plaintiff's claim of ownership of the mineral interests was barred by the statute of limitations.

Defendant offered to pay all the taxes paid by plaintiff, but asked that title be quieted in him. G. Williams was made a party in this action but made default.

Plaintiff moved for judgment on the pleadings, which motion was sustained and judgment was entered for plaintiff as against defendant Deruy, decreeing a lien in favor of plaintiff for $455.39, allowing $100 attorney's fees, and ordering the lien foreclosed. Defendant Deruy appeals.

Defendant contends that the trial court erred in holding that neither the answer nor cross-petition of defendant set forth a defense to plaintiff's cause of action, and error, in rendering judgment for plaintiff on the pleadings. He cites and relies upon Turk v. Page, 68 Okla. 275, 174 P. 1081; McKnight's Heirs v. Bowen, 110 Okla. 9, 235 P. 541; and other similar cases which lay down the rule that:

"Any person, who, in good faith, purchases mortgaged land at a void foreclosure sale and enters into the possession thereof, believing he acquired the title thereto by virtue of his purchase and of the judicial proceedings and of the sheriff's deed made in pursuance. thereof, may avail himself of the statute of limitations as a defense in an action brought by the mortgagor, his heirs or assigns, where his possession has been actual, open, notorious, and hostile to the title claimed by the mortgagee or his successors in interest and to the world at large, and such possession has continued for the length of time required by law to bar the action to redeem."

"Where a purchaser at a foreclosure sale enters into possession of the mortgaged premises, under the claim of title in himself, and not in subordination of the mortgagor's title, and notice of such possession and adverse claim of title is brought home to the mortgagor or his successor in interest, the statute of limitations against an action to redeem is set in motion."

These cases are recognized as stating the law applicable to the existing facts, but in those cases the fact situations were entirely different from the facts disclosed by the pleadings in this case. The question is whether under the facts pleaded defendant was, or could be, holding adversely to plaintiff.

The facts as pleaded, and as particularly pleaded by the answer and cross-petition of defendant, clearly show that the title to the mineral rights had been severed from the surface in 1925 when plaintiff, Noah, conveyed the surface and retained or reserved to himself the mineral rights. This was before proceedings to foreclose the mortgage were commenced. The pleadings further show that in the foreclosure proceedings Noah, the owner of the mineral rights, was not made a party defendant. Therefore, the interest of Noah was not foreclosed. Rives v. Stanford, 188 Okla. 108, 106 P. 2d 1101; McKee v. Interstate Oil & Gas Co., 77 Okla. 260, 188 P. 109.

The general rule is:

"The decisions are unanimous in holding that where the title to the mineral right has been severed from the title to the surface, possession of the surface by its owner is not adverse to the owner of the mineral below it. The mineral owner does not lose his possession by any length of nonuser, and the surface owner cannot acquire title to the minerals by adverse possession based on his exclusive and continued occupancy of the surface alone. It is said that inasmuch as the severance of the title of the mineral estate from the surface estate creates two estates which are as distinct as if they constituted two different parcels of. land, it naturally follows that the title to one cannot be acquired by adverse possession of the other. Nor is the rule changed by the fact that the possession of the surface is under a deed that describes

the lands by metes and bounds and makes no reference to the mineral rights reserved by an earlier deed." 1 Am. Jur. pp. 858-859.

In Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 P. 468, this court held:

"In order to make a holding adverse to one who has reserved all mineral rights and the right to enter thereon for the purpose of extracting the same, there must appear to have been some denial of his right, or some assertion of a claim inconsistent with his right, which does not necessarily appear where a person uses the land merely for agricultural purposes, as such use is entirely consistent with the right of another to prospect for oil and gas under the soil."

In Claybrooke v. Barnes, 180 Ark. 678, 22 S.W. 2d 390, 67 A.L.R. 1436, it is held:

"Where there has been a severance of the legal interest in the minerals from the ownership of the land, adverse possession of the surface is not adverse possession of the mineral estate, even though title to the minerals be asserted all the time."

—and:

"Where ownership of the surface and of the mineral rights has been severed, the only way the statute of limitations can be asserted against the owner of the mineral rights or estate is for the owner of the surface estate or some other person to take actual possession of the minerals by opening and operating mines for the statutory period."

Stoffler v. Edgewater Coal Co., 198 Ky. 523, 249 S.W. 753, was an action to quiet title to the mineral interests in a certain tract of land. Defendants claimed title to the minerals by adverse possession by virtue of their possession of the surface for the statutory period, the title to the surface and the mineral estates having been severed. Therein the court said:

"Of course, there is no merit in the contention that the defendants, and those through whom they claimed, had acquired title by adverse possession. Where there is a severance of the mineral estate from the surface estate, the owner of the minerals does not lose his right or his possession by any length of nonuser, nor can the owner of the surface acquire title to the minerals by his continued occupancy of the surface merely."

The question is extensively annotated in 67 A.L.R. pp. 1442 to 1446, inclusive.

In the instant case defendant Deruy made no allegation or claim that he had at any time made any attempt to explore for oil, gas, or other minerals, or that he had done anything whatever toward taking or even authorizing the taking of minerals from the land.

Under the universal rule stated above and the facts pleaded, defendant did not acquire any title to the mineral interest in the land; plaintiff was entitled to the judgment and lien under the facts pleaded. Cochran v. Godard, 182 Okla 506, 78 P. 2d 692.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, CORN, and GIBSON, JJ., concur.