Willis G. SAUTBINE, C. D. Sautbine, the Unknown Successors, Trustees and Assigns of Willis G. Sautbine, Inc., the Unknown Heirs, Executors, Administrators, Devisees, Legatees, Trustees and Assigns of L. J. Milburn, deceased, and Willis G. Sautbine, Inc., a corporation, Plaintiffs in Error,

v.

Jesse M. KELLER, Isie Keller, Emery A. Oakes, Frankie Oakes, R. M. Oakes, Ethel Oakes, and Federal Life Insurance Company, a corporation, Defendants in Error.

No. 40719.

Supreme Court of Oklahoma.

Oct. 25, 1966.

Rehearing Denied Jan. 31, 1967.

Robert D. Crowe, Oklahoma City, for plaintiffs in error.

Tom J. Ruble, Taloga, Sparks, Boatman & Rizley, Woodward, for defendants in error, Jesse M. Keller, Isie Keller, Emery A. Oakes, Frankie Oakes, R. M. Oakes and Ethel Oakes.

Ben L. Burdick and Paul R. McDaniel, of Crowe, Boxley, Dunlevy, Thweatt, Swin-ford & Johnson, Oklahoma City, for defendant in error, Federal Life Ins. Co., a corporation.

BERRY, Justice.

This appeal involves the correctness of the trial court's judgment quieting the plaintiffs' title to an undivided one-half mineral interest under 1240 acres of land in Dewey County, Oklahoma. Originally separate actions were filed by three different plaintiffs but, since each involved the identical facts and issues, they were consolidated for hearing, determination and appeal.

Prior to the transactions culminating in this appeal, all the land involved was owned by one Ralls who, joined by his wife, had mortgaged the land to the Fidelity Land & Credit Company. This mortgage was assigned to the Federal Life Insurance Company, herein called "Federal", one of the defendants in error in this appeal. On June 27, 1926, the Ralls conveyed the land to Lyn R. Sautbine, subject to Federal's mortgage. By mineral deed recorded July 30, 1926, Sautbine conveyed an undivided one-half mineral interest to Willis G. Sautbine, Inc., which we shall refer to as the defendant. Thereafter Sautbine sold and conveyed the land to one Merrill, subject to the mortgage and excepting the prior mineral grant.

This defendant had been incorporated in Oklahoma on January 13, 1925, and was organized for the stated purpose, among others, of buying and acquiring oil and gas leases and engaging in development and production of oil, gas and other minerals. The incorporators were L. J. Milburn, C. D. Sautbine and Willis G. Sautbine, who owned 98% of the corporate stock. The incorporators became the directors with Willis G. Sautbine as president and C. D. Sautbine as secretary-treasurer. The corporation was active until December 15, 1930, when the corporation charter was canceled for non-payment of license fees.

On May 26, 1927, Federal filed Case No. 2218 in Dewey County seeking foreclosure of the Ralls' mortgage. The petition named

Lyn R. Sautbine and Willis G. Sautbine individually as parties defendant, but the corporation was not mentioned at any point in the proceedings. Summons issued and was served and returned against Willis G. Sautbine personally, and service by publication was had upon Lyn R. Sautbine. No service of process was sought or attempted against the corporate defendant. Upon advice of their attorney the Sautbines individually disclaimed any interest in the property under foreclosure.

The case culminated in a judgment foreclosing the mortgage and purportedly confirming the fee title in Federal. Pursuant to an order of sale in the foreclosure decree a sheriff's sale was had, and on July 31, 1928, the trial court entered order confirming such sale. Thereafter a sheriff's deed was executed to Federal, which was recorded August 13, 1928. Federal then conveyed by warranty deeds to Charles O. Oakes and Jesse M. Keller, who then reconveyed one-fourth of the mineral interest back to Federal. The plaintiffs in each of the mentioned actions derived their interests from Oakes and Keller and no issue was raised concerning plaintiffs' ownership, other than the Sautbine mineral interest.

The petition deraigned plaintiff's title as noted, and alleged the foreclosure proceedings canceled the mineral interest of the corporate defendant; that under the sheriff's deed, based upon the foreclosure, plaintiffs had held open, notorious, continuous and exclusive possession of the land since August 10, 1938, and that their title was valid as against any claim by defendants, and asked judgment quieting their title.

By answer defendants Sautbine alleged matters above recited upon which their claim to the mineral interest was based; affirmatively alleged W. B. Sautbine, Inc. was not a party to the foreclosure action; denied plaintiffs' claim of ownership of one-half the minerals by reason of mortgage foreclosure, or by adverse possession; asked that defendants be adjudged owners and to have title to their mineral interest quieted as against plaintiffs.

An amended petition was filed and Federal was brought into the case and placed upon notice to defend the warranty of title for benefit of plaintiffs. Plaintiffs also sued Federal for damages for breach of warranty but such issues are not involved herein. Federal then answered admitting matters asserted in the petition, pleaded its own ownership of one-fourth of the minerals and alleged any mineral interest claimed by the corporate defendant had been foreclosed and canceled in the foreclosure proceeding because: (1) the corporate defendant was the alter ego of Willis Sautbine as an individual and a conduit for his business affairs; (2) the defendant was merely Sautbine's agent in the transaction; (3) the qualifying stock was held for his benefit and Sautbine was the sole owner of the corporation and acted as an agent in filing the disclaimer; the judgment rendered against Sautbine in the foreclosure suit was binding on the corporate defendant; (4) being the sole shareholder and corporate president, summons upon Sautbine was notice to the corporation and he also had personal knowledge which constituted notice to the corporation; (5) corporate defendant's failure to assert any interest for a long period estopped corporation from claiming interest since plaintiffs had relied thereon; (6) defendant was guilty of laches for failure to assert its interest after notice; defendant was barred from claiming any interest because of plaintiffs' adverse possession.

Plaintiffs' reply and answer to defendants' cross-petition asserted the above mentioned defenses against defendants, and also alleged Sautbine, individually, was the real party in interest in the foreclosure action, which judgment rendered against him personally likewise foreclosed the corporate defendant. Defendants replied denying that the corporate defendant was Sautbine's alter ego, or that laches or statute of limitations applied.

The issues were tried to the court, who took the matter under advisement upon briefs submitted by the parties. Thereafter

the court entered judgment generally for plaintiffs, quieting their title to an entire fee simple estate in the land, except for the undivided one-fourth mineral interest originally retained by Federal. Motion for new trial was overruled and defendants perfected this appeal.

The trial court's judgment, here presented for review, simply was a general finding for plaintiffs, quieting their title as against defendants' claim of ownership of the undivided mineral interest. Being a general finding, the judgment does not disclose the theory upon which trial court predicated his conclusions. Examination of the record, including the trial court's remarks during trial, reflects that plaintiffs principally relied upon the theory, advanced in the first instance by Federal, that the interests of Sautbine, individually, and the corporate defendant were so closely related that the defendant was only his alter ego. Thus defendant was precluded from asserting any interest in the land since his individual disclaimer filed in the foreclosure action must be considered as that of the corporation. Upon this basis plaintiffs argue that this is an equity case wherein the judgment cannot be disturbed unless against the clear weight of the evidence, and that there was competent evidence upon which to base the conclusion that defendant was Sautbine's alter ego. Parenthetically, we note plaintiffs' declaration that they do not rely upon the theory of estoppel by judgment as a bar, so that this matter requires no consideration.

■ Concededly, we adhere to the rule that a trial court's judgment will not be reversed unless against the clear weight of the evidence. This rule, however, necessarily can apply only where it does not run counter to recognized principles of equity.

■ It is axiomatic that equity follows the law, and this maxim is as potent as the clean hands doctrine. The maxim is strictly applied when the rights of the parties are clearly defined and fixed by law. 30 C.J.S. Equity § 103. In Cantrell v. Marshall, 200 Okl. 573, 197 P.2d 990, syllabus 3 follows this principle:

"Where the rights of parties are clearly defined and established by law, equity has no power to change or unsettle those rights, but in all such instances the maxim 'Equity follows the law' is applicable."

■ Although equity may be invoked to protect an existing right, it is unavailable to create a right where none exists. Welch v. Montgomery, 201 Okl. 289, 205 P.2d 288, 9 A.L.R.2d 294. Equity cannot be invoked when its aid becomes necessary through a party's own fault, and hence cannot assist plaintiffs to escape from circumstances created by fault of their privies. Thus, where the rights of parties are clearly defined by law equity has no power to change or unsettle such rights. The rights of the parties in this action were fixed by law. Despite the claim the judgment is not against the clear weight of the evidence, the rights of the parties were fixed, and the trial court's findings cannot stand against the equitable principles noted.

■ Plaintiffs acknowledge the general rule, expressed in Garrett v. Downing, 185 Okl. 77, 90 P.2d 636, that even a family corporation is a separate and distinct legal entity from its shareholders. Also see Butterick Co., Inc. v. Molen, 198 Okl. 92, 175 P.2d 311. However, they assert that this rule is qualified in certain types of cases to the extent that acts of an individual shareholder may become the act of the corporation, and the distinction between the corporation and the principal shareholder will be disregarded. Further, the doctrine of alter ego does not apply solely to instances where the corporate existence is used to do wrong, perpetrate fraud, or commit a crime. Rather this doctrine has been amplified to allow application not only for fraud or wrong, but also in cases where the facts require the court to disregard separate existence of the corporation and shareholders in order to protect rights of third persons and accomplish justice. Mid-Continent Life Ins. Co. v. Goforth, 193 Okl. 314, 143 P.2d 154; Buckner v. Dillard, 184 Okl.

586, 89 P.2d 326. Upon this premise plaintiffs enumerate several points, derived from their interpretation of the evidence, and insist such matters demonstrate the defendant corporation was a sham and a conduit through which Sautbine individually conducted investments in oil properties. Both the Goforth case, supra, and Wallace v. Tulsa Yellow Cab, etc., Co., 178 Okl. 15, 61 P.2d 645, are clearly distinguishable from the present case and not controlling.

■ Brief review of evidentiary matters reflects absence of any proper basis for application of the equitable doctrine herein. There was no evidence to support the conclusion the defendant corporation either was organized or at any time acted to defraud anyone, or to enable Sautbine to evade or defeat any honest obligation. The presumed need for applying the equitable doctrine to protect third persons and "accomplish justice" is not persuasive. Plaintiffs failed to show they had any rights in the mineral interest or that it would further justice to vest them with such an interest, when neither they nor their grantor (Federal) ever had any muniment of title to the minerals involved.

■ There was no showing of inequitable or illegal conduct on Sautbine's part. The corporate defendant came into being in 1925, more than a year before conveyance of the mineral interest by Lyn R. Sautbine, consideration for which came from corporate funds. The mineral deed had been a matter of public record a considerable time before Federal filed the foreclosure action. The trial court's remarks indicated a belief that filing of the disclaimer was prompted by an inequitable motive. Plaintiffs' argument infers Sautbine owed Federal, plaintiff in the foreclosure action, some duty of calling attention to the fact that record title to this mineral interest was vested in defendant. Federal was bound by the facts disclosed by the record. Hillers v. Local Fed. Savings & Loan Ass'n, 204 Okl. 615, 232 P.2d 626. So long as Sautbine did no affirmative act to mislead or deceive Federal he had no

obligation to apprise them of a matter of record, which it was their own duty to ascertain. Bean v. Harris, 93 Okl. 10, 219 P. 300. To constitute estoppel by silence requires not only opportunity to speak, but also an obligation to speak. Sarkeys v. Russell, Okl., 309 P.2d 723. There is no sound reason for holding Sautbine's filing of a disclaimer, upon advice of his attorney, should be deemed to have been the act of, and binding upon, the corporation. Neither Sautbine nor the corporation took any affirmative action that misled plaintiffs, and particularly Federal, into changing position to their detriment.

■ The second proposition advanced by plaintiffs in support of the judgment states:

"THERE WAS SUFFICIENT EVIDENCE FOR THE TRIAL COURT TO CONCLUDE THAT PLAINTIFFS IN ERROR WERE BARRED BY LACHES FROM ASSERTING AN INTEREST IN THE PROPERTY INVOLVED HEREIN."

It is urged that because Sautbine, president of the corporation, was served in the foreclosure suit and had notice of an action which "affected" the mineral interest owned by the defendant, this constituted notice to defendants, in view of the facts in the case: (1) filing disclaimer; (2) assertion of no claim for approximately 30 years; (3) plaintiffs' repeated sale of oil and gas leases. Upon these facts plaintiffs say defendants slept upon their rights and misled innocent purchasers for value, and thus assert that the doctrine of laches must be invoked in bar of defendants' claim.

■ Numerous authorities are presented to the effect that an individual's notice or knowledge of facts may be imputed to the corporation. These authorities are insufficient to support plaintiffs' theory that the corporate defendant and the successors thereo, are precluded from claiming this mineral interest because Sautbine was a party to and cognizant of the foreclosure action. This argument must fail because

predicated upon the invalid assumption that the foreclosure judgment affected the mineral interest of a record owner not made a party to that action. No notice or knowledge, absent fraud or wrongful conduct, acquired by Sautbine was sufficient to cure the failure to bring the corporate defendant into the action as a proper defendant, or to vest the trial court with jurisdiction to subject the corporation's interest to the foreclosure judgment. The judgment which purportedly accomplished this was void upon its face as to the corporate defendant. This rule has been recognized and consistently applied by this Court. Deruy v. Noah, 199 Okl. 230, 185 P.2d 189; Noble v. Kahn, 206 Okl. 13, 240 P.2d 757, 35 A.L.R.2d 124; Viersen v. Boettcher, Okl., 387 P.2d 133. We are of the opinion the conclusion in Viersen, supra, resolved the issues therein raised contrary to plaintiffs' arguments. In that case, in determining questions involving a similar fact situation, we said:

> "It is well settled that when a real estate mortgage is foreclosed by action, and the owner of an interest in the property is not made a party defendant, the interest of such owner is not foreclosed. Rives v. Stanford, 188 Okl. 108, 106 P.2d 1101. The same rule is applicable where the separate interest consists of a severed mineral interest. Deruy v. Noah, 199 Okl. 230, 185 P.2d 189.

> "Since defendants herein, claimants under the trustee's sale, were not parties to subsequent mortgage foreclosure proceedings and sheriff's sale, we hold that their severed mineral interest was not foreclosed thereby, and that plaintiffs herein, claimants under the sheriff's sale, acquired no interest therein."

Plaintiffs also contend there was sufficient evidence to support the finding that title to the severed minerals was acquired by adverse possession. Plaintiffs admit that possession of the surface does not constitute adverse possession against an owner of severed mineral interests. However, they argue this is not an unvarying rule and that the court could conclude that defendants were barred from asserting their interest under 12 O.S.1961, § 93(3). Upon the premise that notice to Sautbine was notice to the corporate defendant and because plaintiffs went into possession in 1928, they assert that prior cases involving prescriptive title to severed mineral interests under tax deed proceedings are analogous and should control.

Among numerous cases plaintiffs cite Fletcher v. Twyford, Okl., 267 P.2d 554, and Gooding v. Edwards, Okl., 290 P.2d 408. In the Edwards case we held that prescriptive title to severed minerals could be acquired by holding possession under a certificate tax deed adversely to the owner. Both above cited cases involved tax sale certificates. Since those cases were decided, we have held that tax sale certificates neither constitute a muniment of title, nor entitle the holder thereof to possession of the land. Allis-Chalmers Mfg. Co. v. George, Okl., 369 P.2d 625. And, it should be noted our holding in Edwards, supra, recently has been explained and expressly overruled in Walker v. Hoffman, Okl., 405 P.2d 57.

Other decisions cited in support of the claim that a prescriptive title can be acquired against an owner of severed minerals involved cases where possession was taken under resale tax deeds. In these cases a different situation appears. In these cases we held the resale tax deed vests an absolute, fee simple title in the holder, *even as against the owner of severed minerals,* and possession thereunder for the prescribed period bars any claim by the prior mineral owner. Jenkins v. Fredericks, 208 Okl. 583, 257 P.2d 1058.

 A claim of title based upon a resale tax deed is notice to the world that the owner in possession thereunder claims a new and absolute fee simple title. This is not true in the case of title derived from an execution sale based upon a mortgage foreclosure. A surface owner cannot acquire prescriptive title to severed minerals based solely upon occupancy of the surface. Deruy v. Noah, supra. The purchaser from one whose title has been acquired by judicial

decree is chargeable with notice of all defects apparent upon the face of the record in the proceedings wherein such decree was rendered. Noble v. Kahn, 206 Okl. 13, 240 P.2d 757, 35 A.L.R.2d 119.

It is unnecessary to elaborate this discussion. The sale involved in this appeal was an execution sale. In Walden-Page Memorial Hospital v. Bentsen, Okl., 370 P.2d 5, syllabus 1 declares that a sale of real estate under an order of sale issued in a mortgage foreclosure is an execution sale, as to which 12 O.S.1961, § 93(1) applies. Thus section 93(3) cannot be considered as the applicable statute of limitation.

 The judgment of the trial court is reversed and the cause is remanded to the district court with directions to vacate the judgment rendered, and to enter judgment quieting defendants' title to the mineral interest involved.

HALLEY, C. J., and DAVISON, WILLIAMS, HODGES and LAVENDER, JJ., concur.

JACKSON, V. C. J., and BLACKBIRD and IRWIN, JJ., dissent.

BLACKBIRD, Justice (dissenting):

I cannot concur in the Majority opinion. The obvious basis for said opinion's statement that the theory of estoppel by judgment requires no consideration, in view of plaintiffs' declaration that they do not rely on it, is found on page 8 of the brief of defendants in error, and reads as follows:

"Despite the straw man which plaintiffs in error set up under Proposition II of their initial brief, defendants in error do not assert that Willis G. Sautbine, Inc., is barred by the doctrine of estoppel by judgment."

Despite the quoted statement on page 11 of the same brief, plaintiffs set forth a quotation from "I O'Neal, Close Corporation, Sec. 1090, at page 20", which, in part, is as follows:

" * * *, a proceeding to which all the shareholders in a close corporation

are parties has been held *res judicata* on the corporation. * * *." (Emphasis added).

and at page 26 of the same brief, plaintiffs say:

"The disclaimer and judgment in the foreclosure action should be held to be binding on Willis G. Sautbine, Inc. In Young v. Rohrbough [88 Neb. 101], 129 N.W. 167 (Neb. 1910), the Court held that where judgment is rendered for directors holding a majority of the stock of the corporation, it is *res judicata* and the corporation cannot be sued on the same facts. This same rule was followed in Stafford v. Russell [117 Cal.App.2d 319], 255 P.2d 872 (Cal.App.1953), cert. denied 346 U.S. 926 [74 S.Ct. 315, 98 L.Ed. 419] (1954), where it was held that a judgment against the corporation of which the present plaintiff was the principal shareholder was binding upon the plaintiff in his subsequent suit. Analogously, *the judgment in the present case in the foreclosure suit*, following disclaimer by Willis G. Sautbine, individually, *binds the corporation*." (Emphasis added).

It would appear by the above quotations from plaintiffs' brief that, although they deny that they assert estoppel by judgment, they do rely on the doctrine of "res judicata." But "collateral estoppel", or, as otherwise termed: "estoppel by judgment" is so related to, or has been so long considered a part of, the doctrine of "res judicata" that the latter two terms have quite commonly been used interchangeably. See the discussions in 30A Am.Jur., "Judgments, sections 327 and 328, and Charles E. Harding Co. v. Harding, 352 Ill. 417, 186 N.E. 152, 88 A.L.R. 563. Thus, in Restatement Of The Law, "Judgments", page 160, it is said:

"The term *'res judicata'* *is used* in the Restatement of this subject in a broad sense *as including merger*, bar, *collateral estoppel* and direct estoppel. When it is stated that 'the rules of res judicata are applicable', it is meant that the rules

as to the *effect of a judgment* as a merger or *as a bar* or as a collateral or direct estoppel are applicable." (Emphasis added).

This Court has employed various rules, or aspects, of the doctrine of res judicata in a variety of cases, including Lewis v. Aubrey, Okl., 404 P.2d 1005; Bruce v. Miller, Okl., 360 P.2d 508; Wilkey v. Southwestern Greyhound Lines, Okl., 322 P.2d 1059, and Wilson-Harris v. Southwest Telephone Co., 193 Okl. 194, 141 P.2d 986, 148 A.L.R. 1337.

In view of the above quoted apparent inconsistency in portions of plaintiffs' argument, and the confusion of terms that has long existed in speaking of the doctrine of res judicata (some of which we attempted to put at an end in the Wilkey case, supra) and this court's duty (consistent with the presumptions of correctness which accompany trial court's judgments on appeal here) to affirm any judgment, general in form, which can be sustained on any theory that accords with the pleadings and evidence (see Allen v. Clawson, 188 Okl. 278, 108 P.2d 121) the trial court's judgment should have been affirmed. To do otherwise would not be fair, or just, either to the litigants or to the trial court, regardless of the legalistic pitfalls or snares the attorneys have fabricated, or encountered, in the course of their arguments to this court.

In my opinion, the trial court's judgment is correct on both the equitable estoppel and collateral estoppel, or estoppel by judgment, theories.

To estop defendants' denial that the foreclosure proceedings in Cause No. 2218, supra, effectively wiped out the disputed mineral interest, even though its record title holder, Willis G. Sautbine, Inc., was not formally a party to said proceedings, it was necessary to show only that said corporation and Willis G. Sautbine had such an identity of interest therein that the two represented the same legal right. Thus, in Drainage Dist. No. 1 Reformed, of Stoddard County v. Matthews (Mo.), 234 S.W.2d 567, it was said:

" * * * In 30 Am.Jur. Judgments, § 178, p. 920, et seq., that rule is stated in these words: 'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties *or their privies,* regardless of the form the issue may take in the subsequent action, whether the subsequent action involved the same or a different form of proceeding, or *whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are* based on different grounds, or tried on different theories, or *instituted for different purposes, and seek different relief.'* (Citing cases).

\* \* \* \* \* \*

"The rule just above stated is founded upon basic concepts of privity and virtual representation. The doctrine of virtual representation, well recognized in equity, is based upon considerations of necessity and paramount convenience and *may be invoked to prevent a failure of justice.* Brown v. Bibb, 356 Mo. 148, 201 S.W.2d 370, 374. The doctrine is applicable *if* (as here) *the interest of the represented and the representative are so identical that the inducement and desire to protect the common interest may be assumed to be the same in each and if there can be no adversity of interest between them.* The rule of Powell v. City of Joplin, supra [335 Mo. 562, 73 S.W.2d 408] is not opposed to the fundamental principle that a stranger to a cause and to its subject matter is not bound by a judgment as to which he had no opportunity to be heard. But in the instant circumstances under the applicable principles and the broad policy of the law to bring litigation to

an end the res judicata rule must be applied. And under the principles of that rule *"privity" depends more upon the relation of the parties to the subject matter than upon their connection as parties with or any activity in the former litigation.* Generally speaking, privies are those legally represented at the trial. *Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity of interest is found to exist, all are alike concluded and bound by the judgment.* * * *."* (Emphasis added).

See also the discussion and authorities cited in Harding v. Carr, 79 R.I. 32, 83 A.2d 79, 82, 83, including Hill v. Bain, 15 R.I. 75, 23 A. 44, 45, in which the court, after discussing previous cases from several jurisdictions, said:

"In these cases the defendants were permitted to avail themselves by way of estoppel of judgments to which they were neither parties nor privies. The ground on which this was permitted seems to have been that the defendants, though not parties to the judgments, *were so connected in interest or liability with the parties that the judgments when recovered could be regarded as virtually recovered for them, for the purposes of estoppel,* as well as by and for the parties of record. * * *."* (Emphasis added).

There the court held:

"Where a person injured by collision with teams left on a highway sues the persons so leaving them and a verdict is found for defendants as not guilty of causing the injuries the judgment rendered on the verdict can be pleaded in bar by the town in an action against it for the same injuries, *the defendants in the two actions being so connected by interest as to be considered the same party for the purpose of the plea."* (Emphasis added.)

In Patterson v. Saunders, 194 Va. 607, 74 S.E.2d 204, 208, 209, it was said:

"It is generally held that 'privity means a mutual or successive relationship to the same rights of property, or *such an identification in interest of one person with another as to represent the same legal rights;* and the term 'privy' when applied to a judgment or decree refers to *one whose interest has been legally represented* at the trial.' 50 C.J.S., Judgments, § 788, p. 324.

\* \* \* \* \* \*

"The facts in Pickeral v. Federal Land Bank, 177 Va. 743, 15 S.E.2d 82, 83, were that Pickeral instituted an action of trespass upon a certain tract of land against James and Esther Waller. The Wallers were in possession under a contract of sale from the Federal Land Bank, but the latter was not made a party to the action. Judgment was rendered for defendants. Thereafter, Pickeral instituted an action, * * * to settle the boundary lines between the adjacent owners—Pickeral and Federal Land Bank. The Bank filed a plea of *res judicata,* based upon the former action of trespass. It was held that the Bank was entitled to rely upon the plea, although *it was not a party to the action* for trespass. Speaking to the point, it was said: 'The Wallers were parties defendant in the first trial. The latter held the land under a contract of sale with the Federal Land Bank; therefore, *the bank was a party inferentially and by representation. Its interest in the outcome and that of the Wallers were identical.* * * *."* (Emphasis added.)

According to a quotation from 30 Am.Jur., 957, in Missouri Pac. R. Co. v. McGuire, 205 Ark. 658, 169 S.W.2d 872, 874, "privity", within the meaning of the doctrine of res judicata has been declared to be " * * * privity as it exists *in relation to the subject matter of the litigation* * * *."* (Emphasis added.) And, in In re Shea's Will, 309 N.Y. 605, 132 N.E.2d 864, 868, it was said:

"The general doctrine of *res judicata* gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, *and those*

*in privity with them,* from subsequently relitigating any questions that were necessarily decided therein. (Citing cases).

\* \* \* \* \* \*

"The only question presented, therefore, is whether appellant corporations are in privity with the Shea heirs, who own all of their stock, so that *the decision against the heirs is binding upon the corporations.* In our judgment, the lower courts properly held that they are.

" 'Privity' is usually defined as 'mutual or successive relationships to the same rights of property.' Haverhill v. International Ry. Co., 217 App.Div. 521, 522, 217 N.Y.S. 522, 523, affirmed 244 N.Y. 582, 155 N.E. 905; Litchfield v. Goodnow's Adm'r, 123 U.S. 549, 551, 8 S.Ct. 210, 211, 31 L.Ed. 199. 'The ground \* \* \* upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is that *they are identified with him in interest'.* Litchfield v. Goodnow's Adm'r, supra, \* \* \* A clearer case for application of the doctrine could hardly be imagined than one involving successive attempts to litigate the same question by *a corporation* and by *its owner* or owners. Such attempts have been barred on principles of *res judicata* or collateral estoppel where all of the corporation's stock was owned by one person \* \* \* (citing cases) \* \* \* ; *the owner,* it has been said, *'will not be permitted to use the corporate cloak as a means to avoid the finality of the former adjudication to which he was a party.'* McNamara v. Powell, supra, 256 App.Div. 554, 558, 11 N.Y.S.2d 491, 496. Manifestly, the situation is not different where all of the stockholders of a family corporation, rather than an individual who owns the entire corporation, have appeared and participated in the prior action which resulted in an unfavorable adjudication.

*"The interests* of the heirs in the Surrogate's Court proceeding and the appellant corporations in this case *are identi-*

*cal."* \* \* \* " (Most emphasis added.)

This Court has applied the principles above referred to in a variety of cases, some of which I have already cited; and in Davis v. Bolon, 74 Okl. 168, 177 P. 903, we quoted an excerpt from 15 R.C.L., § 485, which, among other things, states:

"While in order that a judgment may operate as res judicata there must be identity of parties in the two proceedings, yet it is not generally deemed essential that all the parties to both proceedings be identical, and a judgment is conclusive of the issues involved in a controversy as between the parties and *those standing in privity with them,* although in the action in which it is pleaded some only of the parties are litigants, or because in the subsequent action others are joined as defendants.

\* \* \* \* \* \*

"The mere joining in a second suit of a nominal party who has no interest in the subject-matter in litigation does not prevent a prior adjudication from being a bar. \* \* \*." (Emphasis added.)

In Arnold v. Joines, 50 Okl. 4, 150 p. 130, the following definition of "privity" was quoted from Vol. 24, Enc.Law, p. 746, and applied:

"The term 'privity' denotes mutual or successive relationship to the same rights or property. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party, is that they are *identified with him in interest;* and whenever this identity is found to exist all are alike concluded." (Emphasis added.)

As will appear from a correct analysis of the above quoted statements about the doctrine of estoppel by judgment, it is not necessary, for the purpose of invoking it, to show that the party against whom it is asserted, is the same, or even the "alter ego" of any party to the judgment. It is suffi-

cient if he, she, or it, *is in privity* with him under the above quoted definitions of that term. For this reason, the cases and authorities cited in the briefs dealing with piercing the corporate veil and disregarding corporate entity to hold the acts, or obligations, of the individuals who control, or own all, or most, of the stock of, a corporation, to be those of the corporation itself, are not controlling and will not be discussed.

For this same reason, I deem harmless the alleged error of the trial court in admitting evidence relating to the affairs, property, income, taxes, etc., of the business previously incorporated as "Willis G. Sautbine, Inc.", *after the date of the judgment in Cause No. 2218, supra,* which plaintiffs introduced to show (at least in a retrospective sort of way) that said corporation and Willis G. Sautbine were one and the same entity, or that said named individual was the alter ego of said corporation. Whatever might have been the value, or lack of it, for affirmatively proving Sautbine's control of the corporation, in order to establish that he was its alter ego, a finding inhering in the trial court's judgment that he was "in privity" with it (under the foregoing definitions) cannot be held to be clearly against the weight of the evidence, even though the testimony of Sautbine himself— an unquestionably "interested witness"— was not directly contradicted (see Alexander v. Gee, Okl. 352 P.2d 915, 920, cited in Lincoln v. Wells, Okl., 350 P.2d 589, and McClung v. Knapp, Okl., 353 P.2d 831, citing Thompson v. Giddings, Okl., 276 P.2d 229, 237); and I am convinced that the fact that Sautbine owned only 98%, instead of 100%, of Willis G. Sautbine, Incorporated's stock is insufficient to prevent application of the judgment-estoppel doctrine here, as efficaciously as it was applied in In re Shea's Will, supra, where *all* of the stock of the corporation involved was owned by the Shea estate, or heirs.

To paraphrase some of the expressions used in the foregoing cases, the interest of the Sautbine corporation, and Mr. Sautbine, the individual, was so identical in Cause No. 2218, supra, that their mutual desire to protect that common interest may be assumed. They both derived their interest (directly *or* indirectly) in the subject matter of that action through the same conveyance. Willis G. Sautbine, Inc., had such "an identity of interest" with Willis G. Sautbine, "a party to (the foreclosure) judgment" therein, that in the latter's participation in that case, he must be deemed to have represented "the same legal right." As said in the Shea Case, supra, concerning the Shea heirs and the corporations there referred to, they both "stood to lose or gain by the outcome" of that case, and had an identical interest in avoiding the effect of Federal Life's mortgage lien, and its foreclosure in those proceedings. If this avoidance could be accomplished by taking advantage of, or pleading in such a way as not to call attention to, Federal Life's error in naming the parties defendant in that foreclosure action, then it was to their mutual benefit to do so. To paraphrase a statement in 30A Am.Jur., "Judgments", sec. 328, supra: A person who forestalls a judgment against his interest by pleading that he has no interest "will be precluded from giving (that pleading) a different and inconsistent character in a subsequent suit upon the same subject."

Nor is it an obstacle (as defendants argue) to application of the estoppel by judgment doctrine that neither Sautbine nor the Sautbine corporation have been guilty of any actual fraud or wrongful conduct toward the parties to the present action. It is immaterial that Sautbine owed Federal Life no duty to call its attention to the fact that it had not correctly named as a party defendant in that case, the record owner of the mineral interest here involved and that he was perfectly within his legal rights in filing a disclaimer in Cause No. 2218, supra. In this connection, notice Quirk v. Bedal, 42 Idaho 567, 248 P. 447, 449.

Plaintiffs argue, in substance, that actual (as distinguished from constructive) fraud is not a prerequisite for piercing the corporate veil and holding that the proceedings in

Cause No. 2218, supra, bound Willis G. Sautbine, Inc., as well as Willis G. Sautbine, a named defendant therein. Citing some of the cases cited in Frank McCleary Cattle Co. v. Sewell, 73 Nev. 279, 317 P.2d 957, 959, and others (in this connection see also Gordon v. Aztec Brewing Co., 33 Cal.2d 514, 203 P.2d 522, and Great Oak Building & Loan Ass'n v. Rosenheim, 341 Pa. 132, 19 A.2d 95) plaintiffs contend that it is enough, if treating them as two separate entities would result in an injustice, or produce inequitable results. Here again, I think confusion results from failing to distinguish between cases where the scope of a previous judgment is involved, and those wherein it is sought, as an initial undertaking, to obtain judgment against a corporation, or subject it to an obligation, or to execution, as the alter ego of an individual (or vice versa), as exemplified by the McCleary Cattle Company Case, and Prudential Ins. Co. of America v. A. Enkema Holding Co., 196 Minn. 154, 264 N.W. 576. The estoppel by judgment doctrine is applied against all kinds of litigants whether they are corporations, or not, if they are parties, or in privity with parties, to the previous judgment relied upon by their adversaries. Often referred to by the general term: "res judicata", the principal reason for applying the doctrine is that public policy, as well as the interest of the litigants, requires that there be an end to litigation, which, without it, might be endless. See Harding v. Carr, supra, 83 A.2d p. 83 and 30A Am.Jur., "Judgments", sec. 326. (As said in Drainage Dist. No. 1 Reformed, of Stoddard County v. Matthews, supra, "There must be a sometime end to litigation."). Under it, a judgment in a former action may be used to forestall relitigation of any issue whose determination was "necessarily implied" in the judgment, as well as any actually determined in the action, (Gollner v. Cram, 258 Minn. 81, 102 N.W.2d 521, 83 A.L.R.2d 971) without regard to fraud, deception, or any variety of wrongdoing.

I recognize, as mentioned in Viersen v. Boettcher, Okl., 387 P.2d 133, 137, that ordinarily when the owner of an interest in a parcel of real estate is not made a party to an action to foreclose a mortgage on it, his interest is not foreclosed; but this general rule may not obtain, where, as here, the interest of the non-litigant and that of one of the parties to the action, is so inseparable and indistinguishable in all respects material to the estoppel by judgment doctrine, that it may be regarded as one, and the same, and they both be said to represent the same interest. This was not shown to be the situation in the last cited case, and it was not there claimed that Cal-Cul Oil Company was in privity with its president, who was served as a defendant in the foreclosure proceeding there involved. Nor were the parties, spoken of in Dierks v. Walsh, 203 Okl. 113, 218 P.2d 920, as the "newly-made" defendants, shown to have been "virtually represented" by Dierks Lumber & Coal Co., in the action whose judgment was there urged as estopping them. Here, the judgment in Cause No. 2218, supra, decreed the mortgage lien of Federal Life to be superior to the interests of (all) defendants to that action (including Willis G. Sautbine) and the court ordered the entire fee of the 1240 acres (which included the subject mineral interest) sold to satisfy the lien of said mortgage. In view of the identity of the Sautbine Corporation's interest with that of Mr. Sautbine himself, the court's action in said cause necessarily implied foreclosure against that mineral interest, regardless of the fact that its record title was in the corporation (Willis G. Sautbine, Inc.). (This conclusion necessarily follows from the hereinbefore announced determination that the trial court's implied finding of the sameness, or identity, of their interests cannot be held to be clearly against the weight of the evidence).

It is trite and irrelevant to recognize that if Sautbine had desired, he, or Willis G. Sautbine, Inc., could have, within the legally permissible time after entry of the foreclosure judgment in Cause No. 2218, supra, had said judgment (which purported to foreclose Federal Life's mortgage against

the *entire fee* of the 1240 acres) modified, set aside, vacated or voided as to the mineral interest involved here, on the ground of the court's lack of jurisdiction over said interest by reason of its record owner not being a party to the action. Under the view I take of this case, as said in Luther v. Clay, 100 Ga. 236, 28 S.E. 46, 39 L.R.A. 95:

"* * * it is not necessary for these questions to be considered. Whether they would be well taken or not, if taken advantage of at the proper time, this claimant cannot now be heard to attack the regularity or validity of * * * (that) foreclosure."

The fact remains, however, that this was not done, and either because Sautbine did not wish to call attention to the error in parties defendant, or because he regarded said interest as having been foreclosed and lost by that judgment, he, or the corporation through him, remained silent during all these years while plaintiffs have sold successive oil and gas leases purporting to cover that interest. Because of such conduct, having allowed plaintiffs to believe, or at least to act, as if they acquired that interest through the foreclosure proceedings, both are now estopped to deny that the foreclosure did not cover that interest. When Sautbine filed his disclaimer in Cause No. 2218, supra, he knew the record title to that mineral property was in Willis G. Sautbine, Inc., and that he had an interest in it through his controlling interest in said corporation. Notwithstanding his disclaimer might reasonably have been taken as a disavowal of any interest, direct or indirect, he now seeks to deny, or avoid, any such disclaimer and claim it through Willis G. Sautbine, Inc. One of the tenets of the res judicata doctrine is that:

"A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings, is estopped to assume a position inconsistent therewith, to the prejudice of the adverse party." Snouffer & Ford v. City of Tipton, 150 Iowa 73, 129 N.W. 345, Ann.Cas.1912D, 414.

See also the first paragraph of the syllabus in Skelly Oil Co. v. Funk, 197 Okl. 659, 174 P.2d 241, and Axe v. Los Angeles County, 98 Cal.App.2d 578, 220 P.2d 781, 783, 784. In La Luz Community Ditch Co. v. Town of Alamogordo, 34 N.M. 127, 279 P. 72, 78, it was said:

"Questions relative to estoppel are not in general controlled by technical rules, but are usually determined upon principles of equity and good conscience. In King v. Stroup, 22 N.M. 241, 160 P. 367, after quoting a definition of the general doctrine of estoppel, we further quoted from 10 R.C.L. p. 289, as follows: 'Equitable estoppels operate as effectually as technical estoppels. They cannot in the nature of things be subjected to fixed and settled rules of universal application, * * * nor hampered by the narrow confines of a technical formula. So while the attempted definitions of such estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case. * * * The cases themselves must be looked to and applied by way of analogy, rather than rule.'

"The author then ventures the following summary of the rule: 'That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon.'

"It is well settled that: 'Where a person stands by and sees another about to commit or is in the course of committing an act infringing upon his rights, and fails to assert his title or right, he will be estopped afterwards to assert it.' 21 C.J. Estoppel, § 155.

"It is also a general rule that: 'One who, by his renunciation or disclaimer of a right or title, has induced another to believe and act thereon, is estopped after-

ward to assert such right or title.' 21 C. J. Estoppel, 153.

> "And it is said in the same text: 'And a representation as to the construction and effect of an instrument of obscure and doubtful character is equally good as an estoppel, if believed and acted upon, as is a disclaimer of title to a person about to purchase.' "

By his judgment, the honorable trial court, attempted to rectify the inequitable situation here. In all good conscience and fair dealing, I think he should be upheld.

I recognize that the judgment appealed from herein is a general one, and does not specify the basis, or theory, upon which the trial court held plaintiffs to be the owners of an undivided ¾ths interest in the minerals under the land involved; but it appears from a careful examination of the record, including the Judge's remarks at the trial, that the theory on which plaintiffs placed the most reliance, and on which the trial court's judgment was probably based, related to the allegations of paragraph 4 of Federal Life's answer, which allegations were appropriate and sufficient for asserting the estoppel by judgment theory herein discussed. Since, in my opinion, the trial court's judgment is correct on that theory, it is unnecessary to discuss additional theories, or arguments, advanced in plaintiff's brief for affirming it. Here, the mineral interest involved was not severed by conveyance from the rest of the land's fee simple estate until almost a year after the mortgage was executed, and its lien had attached to the whole fee. If the judgment in Cause No. 2216, supra, effectively foreclosed this mortgage against that interest, as well as against the rest of the interests in the land that were subject to same, as it purported to do—and as cannot be denied by the Sautbine Corporation, under the above described theory of estoppel—then there need be no question of prescriptive title in this case, said judgment being effective as an ostensibly valid link in a chain of legal title.

It will be noted that the Majority opinion directs the trial court, upon remand there, to quiet defendants' title " * * * subject to whatever rights plaintiffs may have under the mortgage." This will be small comfort to plaintiffs because, doubtless, the statute of limitations will bar any supplemental foreclosure of it against the Sautbine interest. See First Nat. Bank & Trust Co. of Oklahoma City v. Stark, 207 Okl. 183, 249 P.2d 117. It will be exceedingly unjust for Federal Life to now have to make good on a warranty of title it gave the Kellers more than 37 years ago, when land in most western Oklahoma Counties had little, or no, mineral value. (Considerations such as these have also been factors in applying the equitable doctrine of "laches". See Alexander v. Phillips Petroleum Co., 10th Cir., 130 F.2d 593, 605).

On the basis of the foregoing, I respectfully dissent to the majority opinion.