Thomas E. ROBERTSON, Appellant,

v.

ROY L. MORGAN, PRODUCTION COM-
PANY, an Oklahoma Corporation, Roy
L. Morgan, an individual, International
Carbon, Inc., an Oklahoma Corporation,
and Carbon Management Co., Inc., an
Oklahoma Corporation, Appellees.

No. 10148.

United States Court of Appeals
Tenth Circuit.

June 18, 1969.

James W. Heyer, Denver, Colo. (Tom
Mason, Tulsa, Okl., with him on brief)
for appellant.

Ted R. Fisher, Tulsa, Okl., for appel-
lees.

Before MURRAH, Chief Judge, PICK-
ETT and HOLLOWAY, Circuit Judges.

MURRAH, Chief Judge.

In this Oklahoma diversity suit, the
plaintiff-patentee Robertson entered in-
to negotiations with defendant Roy L.
Morgan (Morgan) to promote, develop
and market his patent.[1]   As a result of
these negotiations, Robertson entered in-

---

1. The patent covered a method and ap-
paratus for manufacturing carbon from
natural gas and its validity and title are
not in issue here.

to a contract with defendant Roy L. Morgan Production Co. (Morgan Co.), wholly owned by Morgan, to form a new corporation, defendant International Carbon, Inc., to manage the patent rights in the United States. Robertson also entered into a separate contract with Morgan to manage the foreign patent rights and applications through defendant Carbon Management Co., Inc.

In exchange for the United States patent rights assigned to International, Robertson received 75% of the stock in International and $20,000, while Morgan Co. received 25% of the stock and assumed all management authority through a voting trust agreement between Robertson and Morgan Co. When circumstances permitted (in the sole judgment of Morgan Co.) Robertson was to receive an additional $225,000 from International. Morgan Co. agreed to "advance all costs and expenses including all legal fees necessary in the organization and formation of [International], said organizational expense to be reimbursed to [Morgan Co.] when sufficient capital funds are available in [International]." Morgan Co. was further obligated to "use its best efforts [with regard to financing] to promote or arrange for such financing which it is contemplated will be procured from independent sources through means such as pledging the assets or income of [International]," but neither Morgan Co. nor its employees, officers or directors were obligated to "furnish any of the capital funds for the operation of [International] or for any of the purposes for which money is to be raised under the terms of this Agreement." "All salaries, expenses, costs, fees and all other funds advanced by [Morgan Co.] in furtherance of the purposes of this Agreement and [International] shall be reimbursed to [Morgan Co.] immediately upon being available."

The arrangements and obligations with respect to Carbon were substantially the same except they dealt with the for-eign rights and gave 50% of the stock to Robertson and 50% to Morgan.

International was duly organized, and through it, Morgan Co. proceeded to build a pilot carbon black plant as provided in the contract. The funds used for this were advanced by Morgan individually "for or through Morgan Company into International" and expended by International, or on its behalf. Robertson was displeased with the plant and apparently other things and proceeded to demand the additional $225,000 and assign the patent rights to General Collodial Carbon, Inc., wholly owned by Robertson. In a quiet title suit between International and General, title was adjudged in International and is not here involved.

Robertson then brought this suit against Morgan, Morgan Co., International, and Carbon for damages and recision of the agreements on the ground of misrepresentation of Morgan's and Morgan Co.'s ability to finance and promote the patent. Morgan and Morgan Co. answered; counterclaimed against Robertson and third party defendant General for conspiring to interfere with Morgan's and Morgan Co.'s contractual rights; and Morgan filed a cross-claim against International for $113,132.62, representing the funds advanced for the pilot model. International, by separate counsel, answered, substantially denying Robertson's claim and requesting strict proof of Morgan's claim.

The issues were tried to Judge Daugherty, who made the stated findings; denied Robertson's claim; denied Morgan's and Morgan Co.'s claims against Robertson and General; and entered judgment on Morgan's individual claim against International.[2] The essence of Robertson's contention on appeal is that as sole owner and alter ego of Morgan Co., Morgan was individually bound by the Robertson-Morgan Co. contract, and thus prohibited from recouping the funds he had personally advanced to "operate [International], construct the pilot car-

2. The amount of the judgment was $141,311.93 and this amount is not disputed on appeal.

bon black unit and pay legal expenses regarding litigation brought by [Robertson] or caused by him." In support of this theory he invokes the provision of the contract under which Morgan Co. agreed that all funds advanced by Morgan Co. "in furtherance of the purposes of the Agreement and [International] shall be reimbursed to [Morgan Co.] immediately upon being available." The argument is that since there were never sufficient funds available in International to reimburse these expenses, Morgan is not entitled to be reimbursed for any moneys advanced for any purpose, including money advanced individually for construction of the pilot plant and legal expenses regarding ensuing litigation.

In considering this argument on Robertson's motion for a new trial, Judge Daugherty noted that "it was contemplated and agreed that [Morgan Co.] would procure needed financing for [International] from independent sources" and that this was accomplished "by getting the funds from [Morgan individually], an independent source as contemplated by the provisions of said agreement." Robertson urges no error in Judge Daugherty's findings of fact or construction of the contract. His only attack on the judgment is on the narrow thesis that Morgan be individually bound by the Robertson-Morgan Co. contract as a matter of law.

In accord with the general rule, Oklahoma permits the court to disregard the corporate entity if used, (1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime. Sautbine v. Keller, 423 P.2d 447 (Okl. 1967) and see 1 Fletcher, Private Corporations § 41 (perm. ed. rev. repl. 1963). And while the interpretation of the contract is a question of law for the court, C. H. Codding & Sons v. Armour and Co., 404 F.2d 1, 8 (10th Cir. 1968), the factual basis for disregarding the corporate entity must appear in the unchallenged findings of the trial court.

The only finding relating at all to this issue is that Morgan was the sole owner of Morgan Co. But this is insufficient. While mere single ownership may indeed tend to generate some suspicion regarding interrelated activities involving third parties, it cannot, in and of itself, support a finding of fraud or collusion as a basis for disregarding the corporate entity. Sautbine v. Keller, supra and 1 Fletcher, supra § 41.

But Robertson argues that since the trial judge disregarded the corporate entity of General (wholly owned by Robertson) he should be consistent and disregard the entity of Morgan Co. But consistency in the law does not dictate the same result when, as here, the operative facts differ. General was found to be not merely wholly owned, but legally nonexistent under the laws of the state of incorporation (Texas). Its charter had been revoked, right to do business had been forfeited, and the corporation dissolved. Judge Daugherty's Memorandum Opinion and subsequent order are clear and not shown to be erroneous in any respect.

The judgment is

Affirmed.